CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, APPELLEE, v. FIRST NATIONAL BANK OF OMAHA, APPELLANT.

FILED MAY 3, 1899. No. 8840.

1. **Trial Without Jury:** EVIDENCE: REVIEW. Where a cause was tried to the court without a jury, it will be presumed that only competent evidence was considered in reaching a conclusion.

2. **Conflicting Evidence:** REVIEW. Where the evidence is equivocal or fairly conflicting, the findings of the trial court are conclusive.

3. **Trusts:** PURCHASE OF LAND: TITLE. Where one person buys land in his own name, but with the money, and for the use, of another, the latter is the equitable owner of the property and the former holds the title in trust.

4. ———: STATUTE OF FRAUDS: PAROL EVIDENCE. A resulting trust is not within the statute of frauds, and parol testimony is admissible to prove the purchase for, and payment of the consideration by, the beneficiary, even though the deed recites that the consideration was paid by the grantee.

5. **Lien of Attachment.** An attachment or judgment lien on land binds only the actual interest of the attachment or judgment debtor therein.

APPEAL from the district court of Douglas county. Heard below before POWELL, J. *Affirmed.*

*Winfield S. Strawn,* for appellant.

*Greene & Breckenridge, contra.*

· SULLIVAN, J.

December 14, 1892, the appellant commenced an action in the district court of Douglas county against Turlington W. Harvey to recover the sum of $4,655 alleged to be due it on his contract of guaranty. On the same day it sued out a writ of attachment, which was by its direction levied upon the land in controversy as the property of Harvey. The legal title to the land stood in the name of Turlington W. Harvey, but on the 28th of said month, by quitclaim deed, Harvey and wife conveyed the land to the T. W. Harvey Lumber Company. Two days afterward this deed was recorded. On the trial of the case of the bank against Harvey the court found in favor of the plaintiff therein and rendered a judgment against him for $5,537.50 and costs, and ordered the sheriff to proceed as upon execution to advertise and sell so much of the attached property as should be necessary to satisfy said judgment and costs. This he was about to do when this action was commenced by the appellee, and an injunction issued to restrain the bank from taking further steps in the attachment proceeding.

The T. W. Harvey Lumber Company was incorporated in 1883 under the laws of the state of Illinois with a paid-up capital of one million dollars. T. W. Harvey owned a controlling interest in the corporation and was its president. There were seven stockholders in the concern and its main office was in Chicago. In the fall of 1885 it contemplated establishing a branch of its business at Omaha, and on October 3 of that year a lot was purchased at Gibson, a suburb of Omaha on the line of the plaintiff's railway. The title to this lot was taken in the

name of Turlington W. Harvey for the purpose, as he says, of preventing competing lumber companies learning that the T. W. Harvey Lumber Company intended to establish a yard at Omaha. In June, 1886, the yard was opened and July 31, following, Harvey and wife conveyed the lot mentioned to the lumber company. This lot was found to be insufficient for the needs of the lumber company, and Charles A. Harvey, a son of T. W. Harvey, who was the manager of the Omaha branch, negotiated with Henning Henningsen for the purchase of ten acres of land adjoining the land already owned. For some time before these negotiations were begun the lumber company had used a portion of the Henningsen tract for its purposes. The land was bought and, March 18, 1887, at T. W. Harvey's suggestion, a deed was executed in which he was named as grantee. The purchase price was $10,-000, of which $5,000 was paid to Henningsen by a check of the T. W. Harvey Lumber Company on its Omaha bank. The balance was evidenced by five notes of $1,000 each, due one, two, three, four, and five years after date, respectively, signed by T. W. Harvey and secured by a mortgage on the tract. The check for the cash payment was issued March 25, 1887, and on the same day the T. W. Harvey Lumber Company, through the First National Bank of Omaha, by a sight draft, drew on T. W. Harvey, who was then in Chicago, for $5,000. There is evidence to the effect that this draft was paid by the Chicago office of the T. W. Harvey Lumber Company. The Omaha office, however, charged T. W. Harvey's personal account with the check and credited it with the draft. Mr. Henningsen was erecting some buildings in Omaha, and an arrangement was entered into whereby he agreed to take lumber from the T. W. Harvey Lumber Company and credit the same on the notes given in settlement of the balance due for the land. From September 14, 1887, to September 11, 1888, he purchased lumber to the amount of $3,778.08 and June 11, 1890, an additional small bill for $8. These amounts were credited

on the notes in the order of their maturity, and the three notes fully paid were turned over to the lumber company. The other two notes were deposited by Mr. Henningsen with the First National Bank of Omaha as collateral to a loan he had made at that bank. These notes were paid in March, 1891, checks for the purpose being sent by the Chicago office of the lumber company. The checks were those of T. W. Harvey, but he testified that the Chicago office of the lumber company furnished the funds. The tract was assessed in the name of T. W. Harvey, and receipts for taxes paid thereon were issued in his name, but he testified that the taxes were in fact paid by the T. W. Harvey Lumber Company. The tract was used and occupied to some extent by the lumber company for its yards, but Mr. Harvey received no rent; neither did he claim nor exercise any rights of personal ownership over the land. In the spring of 1890 the lumber company closed out its yards at Gibson and began to negotiate for a sale of its real estate. The negotiations did not take definite form until December, 1892, when terms were about agreed upon with plaintiff to purchase all the land the lumber company had formerly occupied at Gibson, including the tract in question. It was then discovered that the title to the Henningsen tract was in Turlington W. Harvey. When this was called to his mind he said he had supposed that the title was in the T. W. Harvey Lumber Company and did not recall that the title was in his name until the land was attached. He says that he then made the conveyance of December 28, 1892, to correct an oversight and put the title in the real owner. Before the sale was consummated plaintiff instructed its counsel to investigate the title to the land. He did so and discovered the attachment on the Henningsen tract as above set forth. He called upon defendant's counsel and sought to persuade him to release the attachment. This was refused, and plaintiff then secured a bond, signed by T. W. Harvey, to save it harmless from the attachment. Soon thereafter plaintiff issued its voucher

for the purchase price and April 20, 1893, received from the T. W. Harvey Lumber Company its deed for the tract purchased. On the trial of the cause the court found in favor of the plaintiff, and the defendant, feeling aggrieved, brings the case to this court by appeal. The questions involved are almost wholly of fact, the principal one being whether the findings are supported by sufficient evidence. The defendant has much to say regarding the competency of the evidence; and much of the evidence is incompetent, but the trial having been to the court, we presume that only the competent evidence was considered. This being so, is there sufficient competent evidence to support the decree of the court? We think there is.

Much stress is placed by defendant on the apparent variance between the testimony of the several witnesses of plaintiff and the books of account of the Omaha office of the lumber company. It is clear that the books introduced disclose only a portion of the transaction. The books do not purport to show what was paid out by the main office in Chicago. The witnesses, in their testimony, stated that certain payments were made by that office, and this testimony being uncontroverted must be taken as true. The same may be said of the contention of defendant regarding the fact that the taxes were assessed in the name of T. W. Harvey and that the receipts for taxes paid were issued in his name. Mr. Miller, a clerk from the treasurer's office, testified that tax receipts were always issued to the person in whose name the property was assessed, without any reference to the person paying, unless a special request was made that the receipt be issued differently. Mr. Harvey testified that the taxes were paid by the lumber company. From all the facts and circumstances detailed we think the trial court was justified in finding that a trust resulted in favor of the lumber company. In classifying trusts Lord Hardwicke, in *Lloyd v. Spillet*, 2 Atk. [Eng.] 148, lays down the rule as to one class of resulting trusts as follows: Where an

estate is purchased in the name of one person, but the money or consideration is given by another, a trust in the estate results to him who gave the money or consideration. 2 Pomeroy, Equity Jurisprudence [2d ed.], section 1037, says: "In pursuance of the ancient equitable principle that a beneficial estate follows consideration and attaches to the party from whom the consideration comes, the doctrine is settled in England, and in a great majority of the American states, that where property is purchased and the conveyance of the legal title is taken in the name of one person, A, while the purchase price is paid by another person, B, a trust at once results in favor of the party who pays the price, and the holder of the legal title becomes a trustee for him." To the same effect is 10 Am. & Eng. Ency. Law [1st ed.] 5, and cases cited. The consideration having been paid by the T. W. Harvey Lumber Company, it was the beneficial owner of the property.

The appellant, however, complains because parol testimony was admitted to prove that a trust resulted in favor of the lumber company, and asserts that the transaction, being one concerning real estate, is within the statute of frauds, and that, therefore, parol testimony was inadmissible to vary the terms of the deed, or to show the circumstances surrounding the transaction. In this contention of counsel we cannot concur. Resulting trusts arise by operation of law, and are expressly excepted from the operation of the statute. (Compiled Statutes 1895, ch. 32, sec. 4.) From their very nature resulting trusts are not within the statute of frauds. (*Champlin v. Champlin*, 136 Ill. 309; 10 Am. & Eng. Ency. Law [1st ed.] 25.) "The real facts as to the payment of the money by a third person may be proved by parol, even though the deed recites that the consideration was paid by the person named as grantee therein." (2 Jones, Evidence sec. 425; *Blodgett v. Hildreth*, 103 Mass. 484; *Deck v. Tabler*, 41 W. Va. 332; *Neil v. Keese*, 5 Tex. 23; *Smith v. Eckford*, 18 S. W. Rep. [Tex.] 210; *Depeyster v. Gould*, 2 Green Ch. [N. J.] 474; *Burden v. Sheridan*, 36 Ia. 125; *Livermore v.*

*Aldrich*, 5 Cush. [Mass.] 431.) Where the trust does not appear on the face of the deed or other instrument of transfer, a resort to parol evidence is indispensable. (2 Pomeroy, Equity Jurisprudence [2d ed.] sec. 1040.) It having been shown that T. W. Harvey had no interest in the land, it was not subject to the defendant's attachment. (2 Freeman, Judgments [4th ed.] sec. 357; *Roberts v. Robinson*, 49 Neb. 717; *Hays v. Reger*, 102 Ind. 524.)

The decree of the district court is right and must be

AFFIRMED.