LEOPOLD DOLL ET AL., APPELLEES, V. AUGUSTUS DOLL ET AL.,
APPELLANTS.

FILED MAY 15, 1914.    No. 17,734.

1. **Trusts:** TITLE TO REALTY. Where one buys real estate for which he
   pays the purchase price, and for convenience takes the title in the
   name of another, the person taking the title will hold the property
   in trust for the one who pays the purchase price.

2. ———: RESULTING TRUST: STATUTE OF FRAUDS. The trust thus
   created is what is known as a resulting trust, and is not affected
   by the statute of frauds.

3. ———: TITLE TO REALTY: PAROL AGREEMENT: STATUTE OF FRAUDS.
   A parol agreement, made at the time of executing a conveyance of
   real estate, that the grantee shall hold the title to property in trust
   for the grantor, and when sold pay the proceeds to him, the grantor
   at all times retaining the possession and collecting the rents and
   profits thereof, is not within the statute of frauds, and the land,
   and the money for which it is sold, belongs to the grantor.

APPEAL from the district court for Douglas county:
GEORGE A. DAY, JUDGE. *Modified and remanded with di-
rections.*

*Guy R. C. Read* and *George W. Shields & Sons,* for ap-
pellants.

*Baldrige, Keller & Keller, De Bord, Fradenburg & Van
Orsdel, Piatti & Wear* and *John G. Kuhn, contra.*

BARNES, J.

This action was commenced in the district court for
Douglas county by Leopold Doll, and the other heirs of
August Doll, deceased, who died intestate in said county,
against Augustus Doll and Charles F. Doll, together with
William Doll, Cina Hanson, Mary Doll McArdle, and Clara
Joern, who refused to be joined in the suit as plaintiffs,
to establish a trust in certain real estate, which it was
alleged August Doll owned, and in which he had an equita-
ble interest at the time of his death, the legal title to

said property at that time being in the defendant, Augustus Doll. Issues were joined, and the cause was tried to the court without the intervention of a jury; the trial resulted in findings and a decree for the plaintiffs as to all that part of the real estate for which August Doll had paid the purchase price, and which he had caused to be conveyed by the vendors to Augustus, and as to the property which August Doll, by deed in which he was the grantor, had conveyed to Augustus, the decree was for the defendants. The defendants excepted to so much of the findings and decree as were adverse to them; the plaintiffs excepted to that part of the decree which was in defendants' favor, and the case comes to this court on the appeal of the defendants and plaintiffs' cross-appeal.

It appears that August Doll was a widower, his wife having died some time in the year 1887; that during the last 20 years of his life he acquired and established a custom of buying and selling property and transacting business in the name of his nephews, Augustus and Charles F. Doll. His reasons for adopting that custom are not material to this controversy, but he seems to have been actuated by some financial losses, which he had sustained by having signed certain bonds for some of his friends. In pursuance of that custom, August Doll purchased property from time to time and caused it to be conveyed by the former owners to his nephews Charles and Augustus. In all cases of that kind August paid the purchase price and exercised full ownership and control over it. He leased it, collected the rents arising therefrom, paid the taxes thereon, and from time to time sold parts of it, Augustus executing deeds and conveyances therefor when he was instructed to do so by his uncle. That custom was kept up until about the time of August Doll's death, which occurred in the month of August, 1910. At the time of his death he owned a tract of land in South Dakota, more particularly described in plaintiffs' petition and the decree of the district court, for which he had paid the purchase price to a Mrs. Offerman, and which he caused her to convey by warranty deed to his nephew, Charles F.

Doll, and in turn he caused Charles F. Doll, on June 1, 1901, to convey it to Augustus for the consideration of one dollar. The testimony with respect to this land shows that August at all times exercised the rights of ownership over it, paid the taxes, and made some improvements thereon. At the time of his death he was also the owner of a farm in Antelope county, Nebraska. It appears that a Mrs. Getzschmann owed August some money, and in order to pay that indebtedness turned over the Antelope county land to him, and he caused her to make the deed of it to his nephew Augustus. August, however, took possession of the farm, paid the taxes thereon, leased it, and collected the rents arising therefrom. When August died he was the owner of a contract of sale of a tract of land in Douglas county, known as the "Ainsworth place," which had been conveyed by the person from whom he purchased it to his nephew Augustus, and for which Augustus had, under his uncle's direction, executed a contract of sale to one Brock. Those properties the district court found and decreed were held by Augustus under what is known as a resulting trust for the benefit of the plaintiffs, the heirs of his deceased uncle. There seems to be no dispute as to the fact relating to that part of the estate of August Doll. He paid the purchase price of the South Dakota land, the Antelope county farm, and the Ainsworth property, and conveyances were taken from the vendors to Augustus in two instances, and in the third to the nephew Charles, and from him to Augustus. This is not disputed by any one. Therefore, in disposing of the contention in relation to those properties, it is sufficient to say that the well-established rule in this state is that, when one person buys real estate and pays the purchase price thereof, and the title is taken for convenience in the name of another, the person taking the title will hold the property in trust for the person paying the purchase price. *Hoehne v. Breitkreitz,* 5 Neb. 110; *Chicago, B. & Q. R. Co. v. First Nat. Bank,* 58 Neb. 548; *Kobarg v. Greeder,* 51 Neb. 365; *Detwiler v. Detwiler,* 30 Neb. 338. Without citing the cases from other jurisdictions, it is sufficient to say that they are gen-

erally in accord with the rule so often announced by this court.

To avoid the undisputed facts above stated, the defendants alleged by their answer that after the death of August Doll's wife he made an arrangement with Charles and Augustus by which they were to have all of his property; and Augustus and Charles agreed to give their uncle August all the money that they then had, and all that they might thereafter have, except such as was necessary for the support of their families. They also agreed to borrow from their brothers and sisters, and to deliver to their uncle August such moneys as their brothers and sisters would loan to them, and their uncle August promised and agreed during his lifetime, and at such times as he should desire, to transfer or cause to be transferred to Augustus and to Charles all the property owned by him; that he was to have his living therefrom, "or all the income of such property, during his life, or while he was able to take care of it, for his own use, if he so desired." Upon this agreement the defendants predicated their defense. The testimony in support of this remarkable agreement appears to be neither persuasive nor convincing. Augustus testified that he gave his uncle a great deal of money from time to time; that all the money he gave to his uncle was represented by checks on the United States National Bank; that the checks were either payable to himself or to his uncle personally. After this testimony had been given by Augustus, a record of all of the checks which he had ever drawn during the years in question on the United States National Bank, were produced in evidence, together with a bank statement of all of his business transactions. This evidence completely refuted his testimony. None of his checks were ever drawn to his uncle August, and the sums mentioned in his testimony totally failed to correspond in amount with any of the checks which he had testified had been drawn by him in furnishing the money which he claimed to have given to his uncle.

The trial court, in disposing of the defense made by Augustus and Charles, said: "The testimony of Augustus

Doll, however, has been very much discredited by his statements upon the witness-stand, and by his conduct and actions, and in determining the rights which he has the court cannot be blinded to the fact that he has made contradictory statements upon oath with respect to his rights in this property. So that * * * it seems to me that, with the presumption of a resulting trust arising by the consideration being furnished by the old man, the title being taken in the young man, the presumption of the trust has not been overcome by the testimony of the defendants; and the court will hold and determine that it is within the rule of a resulting trust, and that the land is being held by Augustus Doll in trust for the plaintiffs in this suit." After a careful reading of the record, we are of opinion that the finding above quoted is amply sustained by the evidence, and we adopt it as our own. It follows that so much of the decree as was in plaintiffs' favor was right and should be affirmed.

This brings us to the consideration of the plaintiff's cross-appeal. It appears from the record that on the 29th day of November, 1899, August Doll conveyed to his nephew Augustus Doll, by warranty deed, the northeast quarter of section 15, in township 14 north, of range 26 west, situated in Lincoln county, Nebraska, for the express consideration of one dollar; that such transfer placed the legal title to the premises in his nephew Augustus. It also appears that on the 7th day of July, 1901, August Doll conveyed to Augustus, by warranty deed, the following described real estate situated in Douglas county, Nebraska, to wit: Lots 7 and 8, in block 14, lot 7 in block 13, Isaac & Seldon addition to the city of Omaha; also the east half of tax lot 30, and all of tax lot 31, in section 21, township 15, range 13 east, Douglas county, Nebraska, and the west 45 5/10 feet of the east 631 feet of lot 16 in Bartlett's addition to the city of Omaha, for the consideration expressed in said deed of $9,000. It appears that the uncle, during the remainder of his life, collected the rents and profits of all of said property, but at his death the legal title was in his nephew Augustus, and there was no

writing in existence from which it could be ascertained how Augustus held the title to the said real estate; but, as we read the record, it appears from the evidence that August intended to retain the equitable title and the beneficial interest to said real estate in himself, and the fact that at all times he kept the possession and collected the rents and profits thereof, and converted them to his own use, takes the case out of the rule announced in *Cameron v. Nelson*, 57 Neb. 381, and *Marvel v. Marvel*, 70 Neb. 498.

Section 2623, Rev. St. 1913, commonly called the statute of frauds, provides: "No estate or interest in land, other than leases for a term of one year from the making thereof, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered, or declared, unless by operation of law, or by deed of conveyance in writing, subscribed by the party creating, granting, assigning, surrendering, or declaring the same." Section 2624 provides: "The preceding section shall not be construed to affect in any manner the power of a testator in the disposition of his real estate by a last will and testament, nor to prevent any trust from arising or being extinguished by implication or operation of law."

It is contended by the appellant that the conveyances above mentioned by August Doll to his nephew Augustus created an express trust, and fall within the inhibition of the statute. But it clearly appears that August did not surrender the possession when the title was taken in the name of his nephew, but himself remained in possession and control of the property. This possession takes the case out of the statute.

*Oberlender v. Butcher*, 67 Neb. 410, was a case where a mother gave her son $500 and asked him to buy her a house. He bought the house, taking title in his own name. Later she went into possession. During her possession the son first mortgaged and then conveyed the premises. In disposing of that case the court said: "Another objection to the decree is that the transaction is within the statute of frauds. As this is an express trust the statute is

applicable here, and as the letters which passed between the parties were not produced there was no written evidence of the transaction. But the *cestui que trust* remitted her money on the strength of it, and afterwards came from another state and took possession of the premises, and this, in the absence of writing, is a sufficient performance and execution of the trust to take it out of the statute." 2 Reed, Statute of Frauds, secs. 889, 890.

In *Woodward v. Woodward,* 89 Neb. 142, it was said: "The fact that the property was purchased upon an express oral agreement of the wife to hold it, or any part thereof, in trust for him (the husband) does not destroy the trust arising from the transaction, but should be considered as tending to rebut the presumption that the money was paid as a settlement upon her."

In *Cowles v. Cowles,* 89 Neb. 327, Cowles purchased the land in question from the Burlington railroad and took a contract therefor. He paid the original payment, and thereafter kept up the subsequent payments. He went into possession of the land, and remained during the whole period of time leading up to the litigation in possession thereof. At the time he completed his payments he directed that the railroad company should make out the deed in the name of his mother. At the time this was done Cowles had a judgment against him which he claimed was an unjust one. He had paid the debt before the judgment was procured. He had the land taken in the name of his mother in order to avoid the payment of this judgment. During the life of the mother she made a will leaving the land to her daughter, and during the last years of her life the mother and father of Cowles lived with him upon the land, and the daughter as well occupied the home of her brother during the last years of her mother's life. The will was made bequeathing this land to the daughter at the request of the plaintiff. In that case the court held: "In disposing of defendant's first contention, it is sufficient to say that the well-established rule in this state is that when one person buys real estate and pays the purchase price thereof, and the title is taken for convenience in the

name of another, the person taking the title will hold the property in trust for the person paying the purchase price."

It must be observed in the case at bar that the conveyance by the uncle to the nephew by direct deed of the property described in the petition was for the accomplishment of a specific purpose. It was to enable the uncle to use the name of his nephew as the conduit through which the title to different pieces of real estate should pass. The understanding was to use the name of Augustus as a matter of convenience.

*Myers v. Myers,* 88 Neb. 656, was an action for a divorce and alimony. In disposing of the contention as to the question of alimony, it appeared that the property had been accumulated by the joint efforts and economy of the husband and wife, and the title, for convenience or by accident, was taken in the name of the wife. It was held, in granting an absolute divorce, that the property was the property of the husband, and a suitable allowance was made to the wife for permanent alimony.

In 15 Am. & Eng. Ency. Law (2 ed.) p. 1127, it is said: "Where land has been conveyed by an absolute deed, the intention of the parties not being to confer on the grantee the beneficial interest, but merely to facilitate the accomplishment of some specific purpose, it has been held that the purpose of the conveyance may be shown by parol, and thereby a resulting trust may be raised in favor of the grantor." This rule is fully recognized in *Beadle v. Beadle,* 2 McCrary (U. S.) 586; *Stubblefield v. Stubblefield,* 45 S. W. (Tex. Civ. App.) 965; *Rice v. Rice,* 107 Mich. 241; *Bartlett v. Bartlett,* 15 Neb. 593; *Clark v. Clark,* 21 Neb. 402; *Pollard v. McKenney,* 69 Neb. 742; *Koefoed v. Thompson,* 73 Neb. 128. Many other cases might be cited in support of the rule. We are therefore of opinion that the district court erred in holding that by the two conveyances last mentioned an express trust was created and that as to the property thus conveyed the plaintiffs could not recover.

As we view the evidence, the judgment of the district court should be modified in so far as that court held that the land described in the said last two mentioned conveyances became the absolute property of Augustus; we find that the real estate described in those deeds was held by Augustus in trust for his uncle August and his legal heirs. The cause is therefore remanded to the district court, with directions to modify the judgment which it heretofore rendered in this case, and enter a decree in accordance with the views expressed in this opinion.

MODIFIED AND REMANDED, WITH DIRECTIONS.

ROSE, FAWCETT and SEDGWICK, JJ., not sitting.