Leopold Doll et al., appellants, v. Charles F. Doll et al., appellees.

Filed December 3, 1915. No. 18344.

1. **Trusts:** Resulting Trust. "Where one buys real estate for which he pays the purchase price, and for convenience takes the title in the name of another, the person taking the title will hold the property in trust for the one who pays the purchase price." *Doll v. Doll*, 96 Neb. 185.

2. ———: ———: Statute of Frauds. "The trust thus created is what is known as a resulting trust, and is not affected by the statute of frauds." *Doll v. Doll*, 96 Neb. 185.

3. ———: ———. The same presumption arises and the same rule obtains in transactions between uncle and nephew as those between strangers.

4. ———: ———: Sufficiency of Evidence. Evidence examined, its substance stated in the opinion, and *held* sufficient to require a finding that the legal title to the several pieces of real estate in controversy in this case were held in trust by Charles F. Doll for August Doll at the time of his death, and in equity were a part of his uncle's estate.

Appeal from the district court for Douglas county: James P. English, Judge. *Reversed in part, and remanded, with directions.*

*Howard H. Baldrige, W. A. DeBord, John G. Kuhn, Louis J. Piatti* and *John D. Wear,* for appellants.

*John C. Cowin, Guy R. C. Read* and *George W. Shields & Sons, contra.*

Barnes, J.

This was a suit in equity to establish a resulting trust in and to certain real estate alleged to have been purchased by August Doll, deceased, and to which the legal title had been placed in the name of his nephew, Charles F. Doll. The issues were the same as those in the case of *Doll v. Doll*, 96 Neb. 185. Therefore we do not deem it necessary to set forth the pleadings in this opinion.

The trial court held that the resulting trust was established as to the real estate described as: Commencing at a point 84 feet west of the northeast corner of lot 1, Reed's Second addition to city of Omaha, Douglas county, Nebraska, thence west 22 feet, thence south 98 feet, thence east 22 feet, thence north 98 feet to place of beginning, known as the "Hulshizer Hardware Store" property; that as to the west half of lot 2, block 167, city of Omaha, known as the "Festner Printing Plant" property, and lots 17, 18 and 19, block 2, Forest Hill addition to said city, known as the "Festner Home" property, a resulting trust was not established, and the two properties last established were decreed to be the property of the defendant Charles F. Doll. From this decree the plaintiffs have appealed, and the defendants have prosecuted a cross-appeal.

The appellants contend that the trial court erred in holding that a resulting trust was not established as to the two real estate properties last mentioned. This brings us to a consideration of the evidence so far as it relates to those two properties.

Considering the testimony first as to the Festner Printing Plant property, it is sufficient to say that it appears from the evidence of Mrs. Getzschmann, of Dexter Thomas, of the officers of the bank which had the lien on the property, and of other persons, all of whom were competent witnesses, that at the request of the Getzschmanns August Doll purchased the property and paid the purchase price thereof, and as a matter of convenience had the deed for the same made to his nephew, Charles F. Doll, who took no part in the transaction. August Doll himself took possession of the property, and with his own money built a three-story building thereon and leased it to the Getzschmanns. The building was partly destroyed by fire in 1897, and August Doll rebuilt it and extended the lease thereon to 1913. He paid all of the taxes, paid for all improvements, and for all of the repairs on the property, collected all of the rents, and had abso-

lute control and possession of the building up to the time
of his last illness. His nephew, Charles F. Doll, never
paid any of the purchase price and was never known in
the negotiations for the purchase of this property. The
evidence, of which we have given merely the substance,
shows conclusively that August Doll was the equitable
owner of this property at the time of his death, and that
Charles F. Doll merely had the legal title as trustee of
the resulting trust which existed in favor of his uncle.

There is no conflict in the evidence as to lots 17, 18
and 19, in block 2, Forest Hill addition to the city of
Omaha. There is abundant proof in the record that
August Doll conducted negotiations for the purchase of
this property and paid for it with his own money. The
purchase was brought about by Mrs. Getzschmann. It
appears that she wanted August Doll to buy the property
for a residence for herself and her family. She applied
to him to loan her the money to purchase the property.
He told her that he would help her get it. They consulted
the agent who had it for sale, and, the terms being satis-
factory to August, the property was purchased. August
paid the purchase price, which amounted to approxi-
mately $12,000. A Mr. Schroeder was the owner of the
property at the time of the purchase, and at the request
of August Doll, and for his convenience, it was deeded by
Schroeder to Charles F. Doll. A contract was made, giv-
ing the Getzschmanns an option to pay August Doll for
this property, and, when paid for, the Getzschmanns were
to have a deed for it. This contract was signed by Charles
F. Doll as he had the legal title, and this was all he did
in relation to the purchase of the property. August Doll
took charge of the deed and the contract with the
Getzschmanns, received the interest payments, saw to it
that they paid the taxes and kept the property insured,
and exercised complete and absolute control over it. The
negotiations for the purchase occurred in the fall of 1897,
the purchase was concluded in 1900, and the deed was
made on June 31 of that year. Later on, in 1907,

August and the Getzschmanns disagreed in relation to these matters and a law suit resulted, after which they came together and settled their differences and new contracts were made.

Mrs. Getzschmann testified that Charles F. Doll never took any part in the negotiations and was never consulted; that he never collected any of the payments on the principal or interest of the Forest Hill property, but that all payments were made to his uncle, August Doll; that August paid the $8,000 mortgage which was on the property and held possession of the deed, notes and contracts up to 1907; that she saw them in his possession at that time. The amount paid by August as the consideration of the property, as above stated, was $12,000. Mrs. Getzschmann's evidence was corroborated by the testimony of Mr. Mickle, who acted as agent for the Provident Life & Trust Company, the owner of the mortgage. We are therefore of opinion that, when the deed to this property was made by Schroeder to Charles F. Doll, he took it in trust for his uncle, August Doll, who was in equity the real owner of the property. *Hoehne v. Breitkreitz,* 5 Neb. 110; *Chicago, B. & Q. R. Co. v. First Nat. Bank,* 58 Neb. 548; *Kobarg v. Greeder,* 51 Neb. 365; *Detwiler v. Detwiler,* 30 Neb. 338; *Doll v. Doll,* 96 Neb. 185. The rule announced in the foregoing decisions applies as well to transactions between uncle and nephew as those between strangers. *Summers v. Moore,* 113 N. Car. 394; *Harris v. Elliott,* 45 W. Va. 245; *O'Neill v. O'Neill,* 227 Pa. St. 334; *Wright v. Wright,* 242 Ill. 71; *Harris v. McIntyre,* 118 Ill. 275; 1 Perry, Trusts and Trustees (6th ed.) sec. 144.

In order to defeat the resulting trust, the defendant Charles F. Doll pleaded and attempted to prove an alleged agreement between himself and his brother, Augustus, and his uncle, August, in substance as follows: That August Doll and defendants Charles F. and Augustus Doll made a valid agreement that the nephews were to give their uncle, August, all the money they then had,

all that they were able to earn, and all that they could
borrow from their brothers and sisters, all of which was
to be used and invested by their uncle for the benefit of the
defendants; and the said August Doll was to convey the
property to defendants Charles F. Doll and his brother,
Augustus Doll, as it became convenient for him to do so,
and such property as he saw fit to so convey to them
should become their property. It must be observed that
the date of the alleged agreement was not stated, and
defendant Charles F. Doll was unable to testify as to
when and where it was made. Neither was he able to
testify as to what amount he gave his uncle of his own
earnings. It appears, however, that defendant's sisters
loaned considerable money, which they had inherited, to
their uncle, August Doll, for which he gave his notes to
them, signed by himself and Charles F. Doll. It also ap-
pears that Charles was guardian for his brother, who was
a minor, and loaned some of his ward's money to his uncle.
The testimony shows, however, that all of this money,
with interest, was repaid to defendant's brother and sis-
ters in the lifetime of August Doll, except $2,000, which
Charles afterwards repaid out of money collected by
him on his uncle's life insurance policy. The defendant
failed to trace any money of his own as payment of any
part of the consideration for the properties in question in
this suit. On the contrary, there was evidence which
tended to show that Charles owed his uncle, August, $169
at the time he was taken to the hospital. As we view the
evidence, the alleged agreement on which defendant relied
was, to say the least, vague and uncertain, and the testi-
mony failed to establish this agreement.

On the argument in this court, counsel contended that
August Doll gave the properties in question to his nephew,
Charles F. Doll; that August had the right to make such
disposition of his property during his lifetime. This fact
may be conceded, but, as we view the evidence, it fails to
support this contention. August Doll was a successful
business man. He was, to a large extent, a dealer in real

estate and a loaner of money. He acquired a large estate. He was frugal in his habits and a lover of money, and, while he was eccentric, his whole life and conduct was such as to convince us that he never intended to give the properties in question in this suit to his nephew. We think this sufficiently disposes of defendant's contentions.

It further appears that, when August Doll was at the hospital, by reason of his last illness, the defendant herein and his brother, Augustus, procured his signature to the following:

"Omaha, Neb., Feb. 9, 1909.

"To all the Tenants and Debtors of Charles F. Doll: You are hereby notified that I hereby resign my agency for my nephew, Charles F. Doll, and the said tenants and debtors of said Charles F. Doll are to pay to the said Charles F. Doll, or to any one empowered by him to collect, any rents, interest or principal due from any of said tenants or debtors to the said Charles F. Doll.

"Witness my hand at Omaha, the date aforesaid.

"(Signed)    August Doll.

"In Presence of: Sister Tina Peterson."

Sister Tina Peterson testified in relation to the conversation at the hospital at the time August Doll signed the paper, as follows: "I was asked when I came in to sign a paper, and it seems to me that I hesitated to do so, and then I was told that it was only to enable his nephews to look after his property, and to collect rents, etc., *while he was sick.* * * * Well, the way I remember it was that the—both the nephews and the old man told me what it contained, what the paper contained. * * * Q. It was just to collect them while he was sick? A. That is the way I understood it." It also appears from the testimony that the nephews were very much elated over getting the uncle to sign this paper. Mrs. Reuman testified, in substance, that Augustus Doll, the brother of the defendant herein, said that they had some trouble collecting the rents, but that now they could get them. He said: "We have got so far; we had to do what my

uncle said, to dance when he whistled: now we have got him; now he has got to do the way we want it." This was in reference to the paper which was signed by August Doll while in the hospital. It also appears that at that time the uncle turned over to his nephews something over $600 in cash; that he left the hospital about March 1, 1909, and was taken to the house of his nephew, Augustus, where he remained until the time of his death in August, 1910. The evidence is convincing, to our minds, that when this paper was signed August Doll failed to understand the nature of its contents.

After a careful examination of the evidence contained in the record, we have reached the independent conclusion that the district court erred in holding that defendant Charles F. Doll was the owner of lots 17, 18 and 19, in block 2, Forest Hill addition to the city of Omaha, and the west half of lot 2, block 167, city of Omaha, known as the "Festner Printing Plant" property. We further find that these two properties belonged in equity to August Doll at the time of his death. The judgment of the district court, so far as it relates to the Hulshizer Hardware Store property, is therefore affirmed, and, as to the other two properties above described, the judgment is reversed and the cause is remanded to the district court, with directions to enter a decree in accordance with the views expressed in this opinion.

REVERSED IN PART, AND REMANDED, WITH DIRECTIONS.

LETTON and FAWCETT, JJ., not sitting.

SEDGWICK, J., not participating.