FEDERAL TRUST COMPANY, APPELLANT AND CROSS-APPELLEE, v. JESSIE C. IRELAND ET AL., APPELLEES AND CROSS-APPELLEES: JOHN W. BAXTER, INTERVENER, APPELLEE AND CROSS-APPELLANT.

FILED FEBRUARY 14, 1933. No. 28364.

*John J. Ledwith* and *Herman Ginsburg,* for appellant.

*Stewart, Stewart & Whitworth* and *Field, Ricketts & Ricketts, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY and DAY, JJ.

GOOD, J.

Plaintiff brought this action against Jessie C. Ireland and her husband, Rolland F. Ireland, to foreclose two mortgages, executed by the Irelands, each covering the same realty, one of the mortgages being for $10,000 and the other for $3,000. Orinda M. Johnson intervened, claimed ownership of the 10,000-dollar mortgage, and asked foreclosure in her own name and for her own benefit. John W. Baxter also intervened, alleging that he was the owner of the real estate; that Jessie C. Ireland held title thereto in trust for him at the time the mortgages were given; that the Irelands were without legal authority to mortgage the realty, and that plaintiff, with full knowledge of Baxter's rights, had taken the two mortgages which it sought to foreclose, together with a third mortgage for $7,000; and charged that all of these mortgages were executed and recorded in furtherance of a scheme to defraud him. Baxter prayed for cancelation of all the mortgages and for general equitable relief.

A trial of the issues resulted in a decree finding generally for Baxter and against plaintiff and defendants Ireland, but found that Johnson was an innocent holder of the 10,000-dollar mortgage and was entitled to a foreclosure thereof. The trial court also awarded a money judgment to Baxter against the plaintiff for $3,632.37. Plaintiff has appealed, and Baxter has filed a cross-appeal.

From the record it appears that Baxter was the owner of about 10,000 acres of land located in several counties in Nebraska; that he consulted Rolland F. Ireland, a practicing attorney, with reference to the management of his lands. Baxter feared there might be an attempt made by his relatives to place him under guardianship. Ireland advised him to execute deeds to all of the land, and to leave the name of the grantee and the consideration blank. These were executed and delivered to Ireland, with an oral agreement between them that, in event any proceeding was instituted to place Baxter under guardianship, Ireland should fill in his name as grantee in the deeds and place them on record. There was no consideration for the deeds so executed. These deeds were executed in 1924. Some time later in that year Ireland filled in his name as grantee, caused the deeds to be recorded and informed Baxter of this action. Baxter, relying upon the integrity of his attorney, believed that the deeds were recorded pursuant to the previous agreement between himself and Ireland. No proceeding, in fact, was commenced to place Baxter under guardianship. Ireland afterwards exchanged a part of Baxter's real estate, whereby he acquired title to the land in Lancaster county on which the mortgages in controversy here were given, and caused the title to this land to be taken in the name of his wife, Jessie C. Ireland.

At the time the deeds were executed by Baxter in blank the lands were incumbered to the extent of about $300,000. After Ireland acquired the record title thereto he increased this incumbrance to more than $600,000. There is evidence tending to prove that the president of plaintiff, prior to the time of the taking of any of the mortgages in con-

troversy, had been advised by a brother of Ireland that the real estate did not belong to him, but that he was simply holding it in trust for Baxter. Whether the information given to its president was sufficient to charge plaintiff with notice of Baxter's rights will be discussed later in this opinion.

Plaintiff concedes the ownership of the 10,000-dollar mortgage by Johnson, and alleges that it began the action to foreclose this mortgage for her use and benefit. It is conceded by all parties that Johnson is an innocent holder of the note secured by the 10,000-dollar mortgage, and was entitled to a decree foreclosing that mortgage. This appeal presents only the question of the respective rights of plaintiff and intervener Baxter.

The record discloses that in another action by Baxter against the Irelands he recovered a judgment and decree, finding that Jessie C. Ireland held title to the mortgaged premises in trust for Baxter, and establishing his ownership of said land and other realty. This decree has not been appealed from and is now final. Plaintiff was not a party to that action; it contends that it is not bound by the decree therein rendered, and that such decree cannot operate to affect plaintiff's previously-acquired mortgage interest in the land. We do not find it necessary to determine that question, but shall proceed to the question of whether the evidence in the present case is sufficient to establish a trust relationship between Baxter and Ireland.

Plaintiff argues that the Irelands did not hold the Baxter land in trust, because an express trust in realty cannot be created by parol and will not be enforced if based upon parol evidence alone. We may concede the soundness of the rule contended for, but think it inapplicable to the facts disclosed. Plaintiff contends that failure and refusal to perform an oral contract to hold real property in trust, or to convey it, is not sufficient to establish a trust *ex maleficio*, and many authorities are cited as sustaining this proposition. Again, we think the authorities cited are not applicable to the facts disclosed.

In the instant case Baxter was induced by the advice of his attorney, in whom he reposed confidence, to execute deeds to his land, not intending to give the land to the attorney, but intending that the attorney should hold the deeds, fill in his name as grantee and place them on record under a certain contingency which never arose. The attorney violated the oral agreement with his client, abused his confidence and placed the deeds on record, and was recreant to the interests of his client in mortgaging, selling and exchanging his client's lands.

It would indeed be strange if a court of equity were powerless to afford relief to the wronged client under such circumstances. Equity is not so powerless. Upon a showing, that is satisfactory and convincing to the court, of the existence of such facts, it will declare the existence of a trust *ex maleficio* and will, so far as possible, protect the wronged client against the recreant and unjustifiable acts of his attorney. The facts which distinguish this case from those cited and relied upon by plaintiff are that here there existed not only a confidential but a fiduciary relationship between attorney and client, and the client had a right to rely upon the advice and representations of his attorney.

In *Pollard v. McKenney,* 69 Neb. 742, this court held: "Where a person obtains legal title to real estate belonging to another by means of fraud, actual or constructive, a court of equity will fasten a constructive trust upon the property, and convert the grantee or those claiming under him, by descent, into trustees of the legal title, and enforce the trust for the benefit of the grantor or those claiming under him." On rehearing of that case, reported in 69 Neb. 753, it was held: "A decree establishing a constructive trust should not be limited to a cancelation of the conveyance whereby the constructive trustee acquired title to the land; the trust should be ascertained and enforced."

In *Doll v. Doll,* 96 Neb. 185, it was held:

"Where one buys real estate for which he pays the purchase price, and for convenience takes the title in the name of another, the person taking the title will hold the prop-

erty in trust for the one who pays the purchase price.

"The trust thus created is what is known as a resulting trust, and is not affected by the statute of frauds."

The applicable rule is stated in 26 R. C. L. 1249, sec. 96, in this language: "Where a person obtains the legal title to property by virtue of a confidential relation and influence, under such circumstances that he ought not, according to the rule of equity and good conscience as administered in chancery, to hold and enjoy the beneficial interests of the property, courts of equity, in order to administer complete justice between the parties, will raise a trust, by construction, out of such circumstances or relations, and this trust they will fasten upon the conscience of the offending party, and will convert him into a trustee of the legal title, and order him to hold it, or execute the trust in such manner as to protect the rights of the defrauded party, and promote the safety and interests of society." In the same section it is further said: "When two persons occupy to each other a confidential or fiduciary relation, and a sale is made by the party reposing confidence to the party in whom confidence is reposed, equity raises a presumption against the validity of the transaction. * * * There is a well defined distinction between undue influence arising from acts which the law deems fraudulent, and undue influence resulting from fiduciary relations existing between the parties. The term 'fiduciary or confidential relation,' as used in this connection, is a very broad one. It has been said that it exists, and that relief is granted, in all cases in which the influence has been acquired and abused,—in which confidence has been reposed and betrayed. The rule is applied with more or less strictness to all the well-known cases of fiduciary relation, as that of attorney and client, trustee and *cestui que trust*, principal and agent, guardian and ward."

In 39 Cyc. 182, it is said: "One who occupies a fiduciary or confidential relation to another in respect to business or property, and who by the use of the knowledge he obtains through that relation, or by the betrayal of the con-

fidence reposed in him under it, acquires a title or interest in the subject-matter of the transaction, antagonistic to that of his correlate, thereby charges his title or interest with a constructive trust for the benefit of the latter, which, as the title or interest so chargeable is not void but is merely voidable, the *cestui que trust* may enforce or renounce at his option. The test of such a trust is the fiduciary relation and a betrayal of the confidence reposed, or some breach of the duty imposed under it. * * * A person is said to stand in a fiduciary relation to another when he has rights and duties which he is bound to exercise for the benefit of that other person. This statement obviously embraces a large variety of relations. The relations of attorney and client, principal and agent, guardian and ward, * * * are familiar illustrations of fiduciary relations."

Under the quoted authorities, the facts disclosed by the record in this case are sufficient to establish a trust relationship, between Ireland and Baxter, and that, as against the Irelands, Baxter is entitled to have the trust enforced.

Plaintiff argues that, even conceding that a trust relationship exists, the evidence is insufficient to prove that plaintiff had notice of that relationship prior to the time it took the mortgages in controversy. The evidence shows that Ireland had executed and delivered to plaintiff a large number of mortgages upon the Baxter lands. Apparently, Ireland was negligent in paying the interest upon these mortgages, and in paying the taxes upon the mortgaged land. A few months prior to the execution of the mortgages in controversy, plaintiff's president, while eating lunch in a cafeteria, saw a brother of Ireland, and called the brother to him. The brother at the time was employed in the office of Rolland F. Ireland. Plaintiff's president inquired where Ireland was. Ireland's brother then testified: "I told him I couldn't tell him just at that time where he was, and in the course of the conversation regarding Rolland Ireland he said he wanted to see him badly, a great many matters that he was not attending to, that

there was some interest due, I believe, taxes he hadn't paid, matters of that kind, and I said to Mr. Reynolds, 'Mr. Reynolds, you are aware of the fact that Mr. Rolland F. Ireland does not own these lands, never bought them and never paid for them,' and that Mr. Rolland Ireland was acting merely as attorney for Mr. Baxter," to which the president replied: "Of course, that doesn't affect our mortgages." Plaintiff insists this information is insufficient to charge it with notice of Baxter's rights, because the conversation did not occur at its place of business, or in the course of plaintiff's business.

We think the rule is that the place where the information is received is not material. The question is whether or not it was in the prosecution of plaintiff's business. If the official was acting for his company and in its behalf, then the information he acquired would be imputed to his company. Undoubtedly, he was acting for and in behalf of his company in making the inquiries, and while acting for and in behalf of his company, he received the information that the lands which Ireland had acquired from Baxter were not Ireland's but belonged to Baxter. A few months after this conversation the same officer of plaintiff assisted in closing the deal between Ireland and another, whereby Ireland transferred a part of the lands owned by Baxter, and received in exchange the lands covered by the mortgages, and almost immediately thereafter this officer of plaintiff took the mortgages upon the land from the Irelands. The evidence given by Ireland's brother is not controverted. In fairness it should be said that the then president of plaintiff had departed this life prior to the trial of this case in the district court. We are convinced that the evidence is sufficient to charge the plaintiff with notice of Baxter's rights in the premises.

Since plaintiff took its mortgages, charged with knowledge that Baxter was the true owner of the land, it can acquire no rights by those mortgages, except in so far as the proceeds thereof were used to discharge a valid and existing lien on the land at the time Ireland acquired legal

title thereto. Since Baxter cannot have a cancelation of the 10,000-dollar mortgage, because it is in the hands of an innocent holder, he is entitled to a judgment against the plaintiff for the amount of that mortgage, less such part thereof as was used to discharge a valid existing lien on the lands at the time the Irelands took the legal title thereto.

Plaintiff insists that the remainder of the 10,000-dollar mortgage, over and above that necessary to discharge the lien of a mortgage to the Aetna Life Insurance Company, was used to discharge a lien upon other lands owned by Baxter, and title to which was, or had been, held by the Irelands. On the other hand, Baxter, as cross-appellant, insists that he was entitled to a judgment against plaintiff for the full amount of the 10,000-dollar mortgage, held by Orinda M. Johnson; or, in other words, that he was entitled to a judgment for the same amount as the decree in favor of Johnson.

Plaintiff insists that the proceeds of the 10,000-dollar mortgage were used to discharge prior liens upon the mortgaged premises and other lands owned by Baxter. The record discloses that when Ireland acquired the legal title to the mortgaged premises in controversy there was an existing valid mortgage thereon which, with accrued interest, amounted to $6,825, and this mortgage was paid and canceled out of the proceeds of the 10,000-dollar mortgage. We find nothing in the record from which it can be ascertained that Baxter in any wise profited by the payment of any other mortgage or lien on other premises.

Baxter insists that he is entitled to a judgment against plaintiff for the full amount of the decree in favor of Johnson, and invokes the principle that he who traffics with a recreant fiduciary shall take nothing by his fraud, and argues that plaintiff is not entitled to be reimbursed or subrogated to the rights of the Aetna Life Insurance Company. It must not be overlooked that Baxter was not a party to this action when it was begun. He came

voluntarily into it as an intervener, and, in effect, as a plaintiff, seeking affirmative equitable relief from plaintiff. Under these circumstances, another principle of equity is controlling, namely, that he who comes into a court seeking equity must do equity.

Baxter traced a part of his property held in trust into the premises covered by the mortgages in controversy. He was entitled to receive those premises free from any incumbrance, except such as existed thereon at the time Ireland, as trustee, obtained the title thereto. That incumbrance at the time amounted to $6,825. Baxter has paid no interest on this incumbrance, and, had it not been for the discharge of that lien by the money furnished by plaintiff, that mortgage, with interest at the rate which it bore, would have amounted, at the time the decree was entered in the trial court, to $8,535.05. Baxter should take this land burdened with a lien for that amount and that amount only. But it is burdened with a lien in favor of Johnson for the amount of her 10,000-dollar mortgage and interest, amounting, at the time the decree was entered, to $11,800. Since his land is burdened with a lien for this greater amount, Baxter is entitled to a judgment against plaintiff for the difference between $11,800 and $8,535.05, or the sum of $3,264.95. The trial court erroneously awarded Baxter a judgment against plaintiff for a greater sum.

Plaintiff argues that Baxter is entitled to pursue but one of two remedies, either to pursue the trust property, or an action in damages, but may not resort to both at the same time, and insists that, in seeking a judgment against plaintiff for the amount of the Johnson lien, he is seeking to pursue both remedies.

The contention is unsound. Baxter has sought to recover the land from his recreant trustee in the condition that it was at the time the trustee acquired it, and, in asking for the cancelation of the mortgage, or, in lieu thereof, a judgment for an amount sufficient to cancel all of plaintiff's mortgages, he is seeking only to recover

the trust property as it was at the time acquired by the trustee.

The judgment of the district court is hereby modified so as to award to Baxter judgment against plaintiff in the sum of $3,264.95, and as thus modified the judgment is affirmed.

AFFIRMED AS MODIFIED.