HAZEL L. NELSON, APPELLANT, V. KENNETH E. SEEVERS ET AL., APPELLEES.

10 N. W. (2d) 349

FILED JULY 2, 1943.   No. 31618.

*Evans & Lee,* for appellant.

*Schaper & Runyan, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

PAINE, J.

This is an action in equity, based on an oral trust in real estate, and praying for a reconveyance of the same. Trial court found in favor of defendants, and dismissed plaintiff's action. Plaintiff appeals.

The plaintiff in her amended petition recited that she was the owner of certain described lots in Merna, Custer county; that defendant Kenneth E. Seevers is her son-in-law, and defendant Ruth Hazel Seevers is the wife of Kenneth E. Seevers and the daughter of plaintiff. She further alleged that she was divorced from Nicholas R. Jacquot on September 12, 1933, and in the property settlement became the absolute owner of the above real estate; that on July 5, 1938, plaintiff entered into an oral agreement with defendant Kenneth E. Seevers whereby she agreed to and did convey to him said real estate, and said defendant agreed to hold said title and property in trust for her and to reconvey same to her at any time upon her request; that said conveyance was made without any consideration whatsoever, and that defendants hold the title to the premises in trust for plaintiff.

Plaintiff also alleged that at said time of this conveyance her former husband, Nicholas R. Jacquot, was suffering from insane delusions and was incompetent, and was threatening the plaintiff and attempting to coerce her into mortgaging said premises in order to raise money to pay off certain of his personal obligations; that plaintiff was very nervous and worried over the actions of her former husband, and was prevailed upon by Kenneth E. Seevers and his wife to deed the property to said Kenneth E. Seevers so that plaintiff's former husband would not be able to harass her about the property; that said deed was recorded on July 6, 1938, and was executed by plaintiff to defendant Kenneth E. Seevers with the understanding that the property would be reconveyed to plaintiff whenever Nicholas R. Jacquot

would stop bothering plaintiff, and upon plaintiff's request to reconvey.

It is further alleged that defendants were in a close and confidential relationship with plaintiff at the time of the execution of the deed, and had it not been for the influence and inducements of defendants and the trust and confidence that plaintiff placed in them she would not have executed the deed; that she believed the statements of defendants that by so placing the title to the property in the name of her son-in-law it would thus conserve and protect the said property for her, and that by so doing she would be able to withstand the importunities of her former husband.

It is also alleged that subsequent to such conveyance plaintiff continued to occupy the premises until the latter part of October, 1939, and rented it thereafter; that on December 29, 1939, she married Lewis H. Nelson, and that in March, 1940, and several times thereafter, she requested defendants to reconvey the premises to her, but that they failed, neglected and refused to do so; that defendants have agreed with one Allie Sommers to sell the premises to him for $1,400. Plaintiff alleges that, although defendants had not heretofore claimed any interest in the property, yet they have had the fraudulent and corrupt scheme of acquiring said property and that they had fraudulently stated and agreed that they would reconvey the premises to plaintiff, while in truth and in fact they never had the actual intention so to do.

It is alleged that defendant Kenneth E. Seevers has collected the sum of $12 a month rent from said premises since May, 1940, for which he has failed to account to plaintiff; that he is insolvent and cannot be made to respond in damages or account for the unlawful conversion of such rents, and plaintiff asks that a receiver be appointed to take charge of the property, and to collect the rents and profits therefrom.

Plaintiff prays that defendants be required to reconvey the real estate to her, or in the alternative that deed of plaintiff to defendants be canceled and the title and right

of possession of plaintiff to said real estate be quieted and confirmed as against defendants.

In their answer defendants Kenneth E. Seevers and wife admitted the execution of the deed to them, and allege that said conveyance was an absolute conveyance of all right of plaintiff in said property and was so intended and understood by both plaintiff and defendant Kenneth E. Seevers, that it was for a good and sufficient consideration, being one dollar and love and affection, by warranty deed duly delivered and without any condition or limitation whatsoever, and admit that they have refused to reconvey the property to plaintiff, and further admit the collection of certain rents, as charged, but deny all other allegations of the petition, and defendants pray that the action of plaintiff be dismissed.

The plaintiff assigns, as errors relied upon for reversal, the customary grounds that the decision is contrary to law and not sustained by sufficient evidence.

From the summary of the pleadings set out herein, it can be seen at once that this is a family lawsuit. The evidence disclosed that plaintiff had reason to fear her former husband, from whom she received a decree of divorce in September, 1933. Some five or six years thereafter, because of his mental troubles, from which he had been in a sanitarium and was once committed to a state asylum, plaintiff began to be in fear because of the importunities of her former husband for her to mortgage this property to secure money to pay off some of his debts, and to avoid trouble she transferred the property to her son-in-law.

The transferred property was all the home she owned. It was not transferred to defraud creditors. It is said that the plaintiff had allowed the taxes to get into default, but on his part the defendant never paid any taxes after he received this deed. The plaintiff had two children living at home with her at the time she conveyed this property to the only man in her family and the husband of her oldest daughter. The evidence also discloses that it was only between the first time plaintiff asked him to reconvey the property

to her and the second time this request was made that the son-in-law and his wife decided they would not reconvey the property back to the mother. It was admitted by both of the defendants on the witness-stand that the plaintiff still had a life estate in this property, which goes far to support the plaintiff's testimony in this case.

It is charged that the trial court erred in ruling that a constructive trust cannot be established by parol evidence. The defendants cite several Nebraska cases to sustain this contention. See *Dailey v. Kinsler*, 31 Neb. 340, 47 N. W. 1045. In this case an opinion was written for the court by Justice Maxwell in 1891, setting out that Miss Catherine Kinsler brought a document to plaintiff to sign, falsely representing to him that it was her application for a pension, and that while he was under the influence of intoxicating liquors furnished by her he signed the instrument, which turned out to be a deed, and that on May 2, 1884, defendant conveyed the land to Feeney, and seven days thereafter the action was brought to enjoin Feeney from conveying the land and to quiet title in plaintiff.

The trial court found for plaintiff. The testimony disclosed that Miss Kinsler conveyed the property to Feeney without consideration and on an alleged parol trust to hold the property for her. The court states that cases might arise where the justice of the matter would create a strong desire to allow a trust to be established by parol, but the court held that the absolute title was in plaintiff at the time the decree divested Feeney of his title. A careful study of this case lends little support to the defendants' claims in the case at bar.

In *Veeder v. McKinley-Lanning Loan & Trust Co.*, 61 Neb. 892, 86 N. W. 982, it was claimed that Emma Veeder before her death had promised her husband to convey to him their homestead, but the court held, after reviewing the facts at length, that the only interest the husband had was a life estate as tenant by curtesy.

In *Elder v. Webber*, 3 Neb. (Unof.) 534, 92 N. W. 126, it is said by the court that there was an absolute failure to establish an express trust.

Several other cases are cited by the defendants, which cannot be discussed without extending the length of the opinion too much.

The definition of "express trusts" is that they are created by the direct and positive acts of the parties, by some writing, deed, or will. 3 Words and Phrases (1st Ser.), 2611.

The subject of constructive trusts, on the other hand, is intimately connected with that of frauds. "Rightly understood, a 'constructive trust' is only a mode by which courts of equity work out equity and prevent or circumvent fraud and overreaching." 2 Words and Phrases (1st Ser.), 1477.

The Nebraska cases involving the law of trusts have all been recently examined by Dean H. H. Foster, assisted by a group of five attorneys, in preparing the Nebraska annotations to the Restatement of the Law of Trusts. It is their conclusion that Nebraska opinions, with only a few exceptions, are supported by the Restatement. See 21 Neb. Law Review, 144.

Section 1e, Restatement, Trusts, reads: "A constructive trust is a relationship with respect to property subjecting the person by whom the title to the property is held to an equitable duty to convey it to another on the ground that his acquisition or retention of the property is wrongful and that he would be unjustly enriched if he were permitted to retain the property." Our court accepted this holding by adopting it as the first syllabus paragraph in *Wilcox v. Wilcox*, 138 Neb. 510, 293 N. W. 378. And in the late case of *Fisher v. Keeler*, 142 Neb. 728, 7 N. W. (2d) 659, this statement of the law is made the third syllabus, and thus commits our court to this clear announcement of the law.

We also follow section 44, Restatement, Trusts, which reads:

"(1) Where the owner of an interest in land transfers it *inter vivos* to another in trust for the transferor, but no memorandum properly evidencing the intention to create a trust is signed, and the transferee refuses to perform the trust, the transferee holds the interest upon a constructive trust for the transferor, if

"(a) the transfer was procured by fraud, duress, undue influence or mistake, or

"(b) the transferee at the time of the transfer was in a confidential relation to the transferor."

There is a full discussion of this section 44 and its relation to many Nebraska decisions found in 20 Neb. Law Review, 160. *Hansen v. Berthelsen,* 19 Neb. 433, 27 N. W. 423; *Pollard v. McKenney,* 69 Neb. 742, 96 N. W. 679; *Federal Trust Co. v. Ireland,* 124 Neb. 369, 246 N. W. 707.

A careful reading of the evidence in the instant case leads to the conclusion that the plaintiff only intended to put the property in the name of her son-in-law temporarily. It does not support the theory that she intended thereby to part with the title forever.

A court of equity will declare a constructive trust for the benefit of the grantor, and not permit the grantee thereof to be unjustly enriched thereby.

Under the rules of law set out herein from Restatement, Trusts, supported by the later decisions of our court, we have reached the conclusion that the decree and judgment of the trial court was wrong, and the same is hereby reversed and remanded to the lower court to enter a judgment for the plaintiff.

REVERSED.