BENJAMIN F. AND KATHLEEN C. ALLEN, APPELLANTS, V. COUNTY
OF LANCASTER, STATE OF NEBRASKA, APPELLEE.

352 N.W.2d 883

Filed August 3, 1984.   No. 83-126.

A. Loy Todd, Jr., of Bailey, Polsky, Cada & Todd, for appellants.

John R. Baylor of Baylor, Evnen, Curtiss, Grimit & Witt, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

Allens sued Lancaster County under the provisions of the Political Subdivisions Tort Claims Act (Neb. Rev. Stat. §§ 23-2401 et seq. (Reissue 1977)). Allens' amended petition alleged that they purchased a residence from the builders thereof by agreement dated October 5, 1977; that at the time of the building of the residence and Allens' purchase thereof, the county's resolution No. 2832 was in effect; that the county issued a permit, pursuant to resolution No. 2832, for the construction of an individual sewage system on the property in question; and that such permit was "in non-conformity with the provisions of Resolution No. 2832." The amended petition goes on to allege that as a result of the county's negligence in issuing the nonconforming permit, in the county's approval of the nonconforming individual sewer system construction, and in the county's failure to properly inspect the system, "the individual sewage system failed to operate satisfactorily and

raw sewage backed up from the system and stood in Plaintiffs' basement," causing Allens damage.

The county demurred; the demurrer was sustained, and the Allens elected to stand on their pleadings. This appeal timely followed. The county's demurrer was based on four grounds. Without considering the merits of three of those grounds, we affirm the trial court's order of dismissal for the reason hereinafter stated.

With regard to the pleadings herein, and particularly the county's demurrer, the law in Nebraska was set out in *Almarez v. Hartmann*, 211 Neb. 243, 245, 318 N.W.2d 98, 99 (1982), where we stated: "For the purpose of determining respondent's demurrer, the District Court and this court are obligated to accept the petitioner's well-pleaded facts, as distinguished from conclusions, as true." By its demurrer, Lancaster County is not admitting that the system, as licensed and installed, is in nonconformity with its own regulation. The allegation that the system is in nonconformity with specified subdivisions of the resolution in question is simply a conclusion of the pleaders, since no facts are alleged in that regard.

Without considering the inadequacies of Allens' petition in failing to set out facts which allegedly show nonconformity with the regulation, the case turns on the terms of the regulation itself. In that connection, resolution No. 2832 provides in pertinent part as follows: "Section 9. REQUIREMENTS. All individual sewage disposal systems shall be constructed, altered, or extended in conformance with the requirements of the health Officer who shall be guided by the following criteria: . . . ."

Approximately five pages of "criteria" follow. Allens allege, as conclusions, that the county violated seven of the listed criteria, including nonconformity with § 9a(2), (3), and (4), which provides as follows:

    a.  General

       . . . .

       (2)  Design

           The design of the individual sewage disposal system shall take into consideration location with respect to wells or other sources of water supply,

topography, water table, soil characteristics, area available, and maximum occupancy of the building.

(3) Type of System

The type of system to be installed shall be determined on the basis of location, soil permeability, and ground water conditions, including depth to the water table.

(4) Sewage

The system shall be designed to receive and treat all sewage, including wastes from garbage grinders and automatic washing machines, from the building. Drainage from basement footings or from roofs shall not enter the system. In addition, industrial wastes shall not be discharged into the system when their introduction would interfere with proper operation of the system.

The petition also alleges violations of § 9b(1), which sets out specified minimum distances between components of a system; § 9e, which sets out required square footage of absorption areas; § 9f, which sets out a procedure to be followed in determining a percolation rate; and § 9g, which sets out minimum standards for absorption system construction.

Examination of the general requirements for such individual sewage disposal systems shows that such systems are *not* required to be constructed according to the regulation, but are required to be constructed in conformance "with the requirements of the health Officer who shall be *guided*" by the listed criteria. (Emphasis supplied.)

Additionally, as can be seen from an examination of the criteria listed as § 9a(2) and (3) above, there are no specifications set out therein—one section referring to taking certain factors "into consideration," and the other to making determinations "on the basis of location, soil permeability, and ground water conditions."

It is clear that the regulation in question calls for the exercise of the discretion of the health officer, who is defined in the regulation as "the Director of Health of the Lincoln-Lancaster County Health Department or his authorized representative." That officer's "requirements," which are not spelled out in the regulation nor in the pleadings, determine the standards.

Section 23-2409 sets out the exclusions from the Political Subdivisions Tort Claims Act. Section 23-2409(2) provides that the act shall not apply to:

> (2) Any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the political subdivision or an employee of the political subdivision, whether or not the discretion be abused.

There is no definition of the term "discretionary function" in our statute. Courts have labored for many years to provide a definition, with limited success. The only approach which sheds any light on the problem seems to be a review of the guidelines of previous decisions and an application of those guidelines to the particular case. See *Payton v. United States*, 679 F.2d 475 (5th Cir. 1982).

This court has considered the matter, and in *Koepf v. County of York*, 198 Neb. 67, 73, 251 N.W.2d 866, 870 (1977), stated:

> It seems to us that the better rule and one that should be adopted in this state is one that suggests that the discretionary-function exemption extends only to the basic policy decisions and not to ministerial acts arising therefrom.

We reaffirm that statement, and turn to an examination of this case. Allens argue, at page 19 of their brief, that "[i]t cannot be argued that the acts complained of involved a basis [sic] policy decision, as these acts affected only an individual property owner. The acts complained of were ministerial in nature and cannot be excluded under subsection two (2) of § 23-2409."

With regard to the first statement it is not correct. The purpose of resolution No. 2832 is to regulate "individual sewage-disposal systems within the unincorporated areas in Lancaster County outside of the incorporated cities and villages . . . ." For whatever reason, the board of commissioners of Lancaster County has given to the health officer of the county the duty to oversee all such installations, and has given to that officer broad discretion in determining the "requirements" for individual systems. Such a grant of power constitutes the delegation of the right to make policy in that regard. The health

officer of Lancaster County is to set the policy by his granting of individual permits to install systems in the way he determines, subject, of course, to overall guidelines.

The "discretionary function" exemption from tort claims acts generally is best described in one of the early cases interpreting the Federal Tort Claims Act. In *Dalehite v. United States*, 346 U.S. 15, 35-36, 73 S. Ct. 956, 97 L. Ed. 1427 (1953), the Court stated:

> It is unnecessary to define, apart from this case, precisely where discretion ends. It is enough to hold, as we do, that the "discretionary function or duty" that cannot form a basis for suit under the Tort Claims Act includes more than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion. It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable. If it were not so, the protection of § 2680(a) would fail at the time it would be needed, that is, when a subordinate performs or fails to perform a causal step, each action or nonaction being directed by the superior, exercising, perhaps abusing, discretion.

*Dalehite,* insofar as it interprets the discretionary function exception, was recently reaffirmed by the U.S. Supreme Court in *United States v. Varig Airlines,* 467 U.S. _____, 104 S. Ct. 2755, 81 L. Ed. 2d 660 (1984), where the Court stated at 104 S. Ct. 2764, "While the Court's reading of the Act admittedly has not followed a straight line, we do not accept the supposition that *Dalehite* no longer represents a valid interpretation of the discretionary function exception." *United States v. Varig Airlines, supra,* denied recovery against the United States in a situation analogous to the present case. In the *Varig Airlines* case respondent airlines sought to recover damages resulting from fires occurring in aircraft while in flight. The aircraft had been inspected and certified as safe by the Federal Aviation Administration. Pursuant to statute, the FAA delegated certain

inspection and certification responsibilities to qualified private individuals. In holding that the activities of the FAA and any individual person delegated inspection and certification authority were discretionary functions and not subject to the Federal Tort Claims Act, the Supreme Court stated at 104 S. Ct. 2765:

> Second, whatever else the discretionary function exception may include, it plainly was intended to encompass the discretionary acts of the Government acting in its role as a regulator of the conduct of private individuals. Time and again the legislative history refers to the acts of regulatory agencies as examples of those covered by the exception, and it is significant that the early tort claims bills considered by Congress specifically exempted two major regulatory agencies by name. See *supra*, at ____. This emphasis upon protection for regulatory activities suggests an underlying basis for the inclusion of an exception for discretionary functions in the Act: Congress wished to prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort. By fashioning an exception for discretionary governmental functions, including regulatory activities, Congress took "steps to protect the Government from liability that would seriously handicap efficient government operations." *United States v. Muniz,* 374 U.S. 150, 163, 83 S.Ct. 1850, 1858, 10 L.Ed.2d 805 (1963).

In this case the health officer had a great deal of "room for policy judgment and decision," and as stated in *Dalehite* at 36, where there is such room "there is discretion." The health officer is clearly required to exercise his discretion. He is not given standards that he must follow, but instead he and the public are informed that individual sewage systems must be installed "in conformance with [his] requirements" and that, in connection with those requirements, he is to be guided by certain criteria, many of which require the exercise of further discretion.

Consideration of the second of Allens' statements set out above—that the acts complained of were

ministerial—reinforces our holding herein. In *State of Nebraska ex rel. Line v. Kuhlman*, 167 Neb. 674, 682-83, 94 N.W.2d 373, 380 (1959), we stated:

"A ministerial act has been defined as one performed in response to a duty which has been positively imposed by law and its performance required at a time and in a manner or upon conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion."

In Mekota v. State Board of Equalization & Assessment, 146 Neb. 370, 19 N.W.2d 633, we quoted with approval this definition: " 'A ministerial act may * * * be defined to be one which a person performs in a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to, or the exercise of, his own judgment upon the propriety of the act being done.' "

Examination of the regulation herein, delegating authority to the health officer of Lancaster County, shows clearly that that officer is to exercise a great deal of his own judgment and that his acts are clearly not ministerial.

It should be noted that this case presents a different factual picture than that in *Wickersham v. State, post* p. 175, 354 N.W.2d 134 (1984). In *Wickersham* as we do here, we held that the discretionary function exemption extends only to policy decisions and not to ministerial activities, but in *Wickersham* we held that the state, in its ministerial activities, violated its own regulations. The regulations were specific, and the state's alleged negligence was in not following the specific regulations. Such a factual situation is not present here.

We hold, under the specific language of the resolution in this case, that the act of the county health officer in issuing the permit in question was a discretionary act and, as such, exempt from the requirements of §§ 23-2401 et seq.

With regard to the allegations of negligence in the approval of the sewer system in question and in negligence in inspection, there is no allegation that such actions did not fully conform to the discretionary permit issued, and therefore no cause of

action is stated in those allegations. The order of the trial court in sustaining the county's demurrer was correct and is affirmed.

AFFIRMED.

KRIVOSHA, C.J., concurring in the result.

While I concur in the result reached by the majority in this case, I write separately due to a concern that someone may misread the majority opinion and conclude that we approve the format of resolution No. 2832. In fact, we do not pass upon the propriety of such a resolution, which delegates to an administrative officer such broad authority without specific guidelines, said issue not having been raised by the parties to this case. On its face it would appear to be in violation of the longstanding rule in this jurisdiction that the Legislature must prescribe specific guidelines when delegating authority to an administrative officer. See *Lincoln Dairy Co. v. Finigan*, 170 Neb. 777, 104 N.W.2d 227 (1960). The majority opinion should only be understood to stand for the simple proposition that where such a resolution is enacted and no one attacks the validity of the ordinance, the ordinance does not give rise to a cause of action under the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. §§ 23-2401 et seq. (Reissue 1977).