KENNETH RUPPERT, WILBUR RUPPERT, BERNARD RUPPERT, I.B. HILL, AND HELEN MAGEE, APPELLEES, V. ETHEL P. BREAULT AND FERN LOUISE FENNY, APPELLANTS.

384 N.W.2d 284

Filed April 4, 1986.   Nos. 85-040, 85-041, 85-042, 85-043, 85-044.

John F. Hanson & Fred T. Hanson of Hanson & Hanson, for appellants.

Arlan G. Wine, for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

KRIVOSHA, C.J.

The five appellees in this case, Kenneth Ruppert, Wilbur Ruppert, Bernard Ruppert, I.B. Hill, and Helen Magee, each individually filed suit in the district court for Red Willow County, Nebraska, seeking to impose a constructive trust upon the proceeds of five certificates of deposit purchased by Lloyd H. Ruppert, the proceeds of which are now in the possession of Ruppert's two daughters, the appellants, Ethel P. Breault and Fern Louise Fenny. The cases were ultimately consolidated for trial and are jointly appealed to this court. Following trial in the district court for Red Willow County, Nebraska, the district court imposed a constructive trust upon the proceeds of the five certificates of deposit. It is from this order which the appellants Breault and Fenny appeal. A number of assignments of error are alleged. We turn first, however, to the principal underlying issue, that being whether the district court should have imposed a constructive trust on the proceeds of the five certificates of deposit. We believe that the district court should not have entered such an order, and for that reason we reverse and remand.

The evidence, such as it is presented in the record, is virtually without dispute. The appellants, Ethel P. Breault and Fern Louise Fenny, are the daughters of Lloyd H. Ruppert, who died testate on July 25, 1982. By the terms of a will executed by Ruppert on May 20, 1980, he left all of his residuary estate to his two daughters, if his wife predeceased him. At the time Ruppert executed his will, he also executed an unlimited general durable power of attorney appointing his daughter Ethel P. Breault as his attorney-in-fact.

Following his wife's death in September of 1980, Ruppert instructed Breault that in the event he was rendered helpless by a stroke she was to "cash in all my assets into one account in my bank, because I might lay there a long, long time and it will take a lot of money." One of the appellees, I.B. Hill, corroborated this fact by testifying that Ruppert had given Breault a power of attorney "to be used to pay for his debts or his sickness or anything else; that he did not want to leave this world owing any

money."

The record further discloses that in 1981 Ruppert decided to sell his home and personal belongings. He eventually moved into a trailer on the property of one of the appellees, Kenneth Ruppert. At the time of the sale of his home and personal belongings, Ruppert again repeated his instructions to Breault and gave her a key to his safe-deposit box. The evidence discloses that from time to time he reminded her of his instructions, and as late as June 13, 1982, four days before his final illness began, he again instructed her as to what she was to do with his assets in the event he suffered a stroke. It is reflected by the evidence that during all of this time Ruppert was a strong-minded, independent, and clever businessman who was very capable of handling his own affairs.

On June 17, 1982, Ruppert suffered a stroke. On July 19, 1982, Breault returned from the State of Washington, where she lived, to McCook, Nebraska. Ruppert's doctors advised Breault that Ruppert, in a coma since the stroke, could remain alive in that state for some time. Breault testified that she concluded at that time that in light of his previous instructions to her, and the opinion expressed by the doctor, that it was her "time to take over." She went to Ruppert's bank, The First National Bank of McCook, for the purpose of getting his assets together. She testified that it was her intention to fly him back to the State of Washington when his health improved and take care of him there, using his savings.

Using the key given to her by her father and the original copy of the power of attorney, Breault went to The First National Bank of McCook and opened Ruppert's safe-deposit box. She discovered seven certificates of deposit and several U.S. Savings Bonds. The certificates were issued on four separate banks. Two of the certificates of deposit, each for $10,000, were in the name of Ruppert alone. The other five certificates of deposit, two in the amount of $10,000 and three in the amount of $5,000, were each in the name of Ruppert and one of the appellees. The evidence discloses that Breault was advised by the bank that cashing the U.S. Savings Bonds would be a long, drawn-out process; therefore, she decided to cash all of the certificates of deposit, including those in Ruppert's name

alone, and place them in one account. Upon cashing the First National certificates of deposit, and paying a penalty for early withdrawal, she deposited the remaining funds in Ruppert's bank account at The First National Bank of McCook. She then cashed each of the other three certificates of deposit.

On July 24, 1982, she departed for Washington State, taking with her the savings bonds in Ruppert's name, as well as four cashier's checks made payable to Lloyd H. Ruppert and representing the proceeds of certificates of deposit in The First National Bank of McCook, First Federal Lincoln, American Charter Savings and Loan Association, and the McCook National Bank. Additionally, she withdrew all of the money from Ruppert's checking account except for approximately $2,000 which she left for current expenses. She testified that she intended to open an account in Ruppert's name in Washington State so that she would be able to pay all of his expenses from her home. She also testified that she did this so that, when the time came, she could arrange for Ruppert to be transported to Washington.

All of the assets, including the cashier's checks for the certificates of deposit, were kept in the name of Lloyd H. Ruppert alone. On July 25, 1982, the day after Breault returned to Washington, her father died. Breault was notified, and on July 27, 1982, she returned to McCook, Nebraska, bringing back all of the assets with her and putting all of the cash items in The First National Bank of McCook checking account. Ruppert's will was informally probated on August 2, 1982, and Breault was appointed personal representative. Notice to creditors was published, and the time for filing claims expired October 4, 1982. No objections were filed, and a final accounting and petition for complete settlement was filed on February 17, 1983, and a formal hearing was held on March 15, 1983. At that time the county court entered an order finding that Breault and her sister, Fenny, were the only surviving heirs of Ruppert and entitled to all of the property in his name.

In the meantime, on March 1, 1983, the appellees filed suit in the district court for Red Willow County, Nebraska, seeking to have a constructive trust imposed on the proceeds of the five certificates of deposit. As we have indicated, the district court

granted their relief and imposed a constructive trust.

In beginning our analysis of this issue, we must keep in mind that, this being an action in equity, it is reviewed by us de novo. Neb. Rev. Stat. § 25-1925 (Reissue 1979); *Ford v. Jordan*, 220 Neb. 492, 370 N.W.2d 714 (1985). Before proceeding to review those facts de novo, we believe it appropriate to set out the rules applicable to a constructive trust. In *Kuhlman v. Cargile*, 200 Neb. 150, 157, 262 N.W.2d 454, 458-59 (1978), we noted:

> When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee. Campbell v. Kirby, 195 Neb. 610, 239 N.W.2d 792 (1976). A constructive trust is a relationship, with respect to property, subjecting the person who holds title to the property to an equitable duty to convey it to another on the ground that his acquisition or retention of the property would constitute unjust enrichment. . . . Each case involving the existence of a constructive trust is to be determined on the peculiar facts, circumstances, and conditions presented therein. Jenkins v. Jenkins, *supra.*

Earlier, in *Nelson v. Seevers*, 143 Neb. 522, 527, 10 N.W.2d 349, 351-52 (1943), we described in some detail how a constructive trust comes into existence, noting:

> The subject of constructive trusts, on the other hand, is intimately connected with that of frauds. "Rightly understood, a 'constructive trust' is only a mode by which courts of equity work out equity and prevent or circumvent fraud and overreaching." [Citation omitted.]
>
> . . . .
>
> . . . "A constructive trust is a relationship with respect to property subjecting the person by whom the title to the property is held to an equitable duty to convey it to another on the ground that his acquisition or retention of the property is wrongful and that he would be unjustly enriched if he were permitted to retain the property."

In *Nelson, supra* at 527-28, 10 N.W.2d at 352, we further cited from the Restatement of Trusts § 44 (1935), noting:

> "(1) Where the owner of an interest in land transfers it *inter vivos* to another in trust for the transferor, but no

memorandum properly evidencing the intention to create a trust is signed, and the transferee refuses to perform the trust, the transferee holds the interest upon a constructive trust for the transferor, if

"(a) the transfer was procured by fraud, duress, undue influence or mistake, or

"(b) the transferee at the time of the transfer was in a confidential relation to the transferor."

And in *Guynan v. Guynan*, 208 Neb. 775, 779, 305 N.W.2d 882, 885 (1981), we noted:

"Constructive trusts arise from actual or constructive fraud or imposition, committed by one party on another. Thus if one person procures the legal title to property from another by fraud or misrepresentation, or by an abuse of some influential or confidential relation which he holds toward the owner of the legal title, obtains such title from him upon more advantageous terms than he could otherwise have obtained it, the law constructs a trust in favor of the party upon whom the fraud or imposition has been practiced."

The question that we must then determine is whether Breault acquired title to these funds by reason of some fraud or overreaching. We think not. At the time she cashed the certificates of deposit, Breault had the absolute right to do so, and none of the appellees could have maintained any action or obtained any relief. The evidence is clear that none of the appellees had contributed in any manner to the purchase of the certificates of deposit and that they had been placed in the name of Ruppert and the various appellees solely by Ruppert. Having made that decision in the first instance, he was at liberty to change his mind at any time he chose, and, had he done so, none of the appellees would have been in a position to maintain an action or seek to have a constructive trust impressed upon the proceeds in the hands of Ruppert. By Ruppert's having given Breault a durable power of attorney, Breault stood in the same shoes as Ruppert, and just as Ruppert could not have been required to pay the proceeds over to the five appellees during his lifetime, *Craig v. Hastings State Bank*, 221 Neb. 746, 380 N.W.2d 618 (1986), neither could Breault have been required to

pay the proceeds over to the five appellees so long as Ruppert was alive. Nor could the appellees in this case have prevented Breault from cashing the certificates of deposit and placing the proceeds in an account in Ruppert's name. Neb. Rev. Stat. § 30-2703 (Reissue 1979).

Had Breault not held a durable power of attorney or not placed the proceeds in Ruppert's name but, rather, in her own, we might have a different situation. But she did not do that. Breault's actions during Ruppert's last illness were in all respects legal and proper and clearly within what everyone concedes were Ruppert's instructions to Breault. What caused the disruption was not what Breault did pursuant to Ruppert's instructions but, rather, that, contrary to what Ruppert's doctor told Breault, Ruppert did not survive for a very long time. Instead, he died shortly thereafter. The record is clear, however, that when Breault cashed the certificates of deposit she did not know that Ruppert would soon die but, rather, believed he would survive in a coma for some long time. These facts are not an appropriate situation for imposition of a constructive trust.

Appellees seem to maintain, however, that despite all this, because the proceeds of the certificates of deposit were in the name of Ruppert at the time of his death and therefore passed to Breault and her sister by reason of Ruppert's last will and testament, somehow a constructive trust should be imposed. We have, however, said many times that the burden of establishing a constructive trust is always upon the person who bases his rights thereon, and he must do so by evidence that is clear, satisfactory, and convincing. See, *Slocum v. Bohuslov*, 164 Neb. 156, 82 N.W.2d 39 (1957); *Peterson v. Massey*, 155 Neb. 829, 53 N.W.2d 912 (1952). The evidence in this case simply does not establish clearly, satisfactorily, or convincingly that Breault acquired the property by reason of any improper act. Absent such evidence to the required degree, the imposition of a constructive trust is inappropriate.

In *Marco v. Marco*, 196 Neb. 313, 242 N.W.2d 867 (1976), this court was presented with a situation not too dissimilar from the instant case. The appellee, Dorothy Marco, married Lawrence Marco following the death of Lawrence Marco's first

wife, who was the mother of his two sons, Jerry and Jim. Together, Lawrence and Dorothy had 12 children. The evidence further reflected that Lawrence Marco's sons by his previous marriage each, from a very early age, began to work for his father in his various auto businesses and continued to do so throughout his adult life. Each of them constructed homes or businesses on properties owned by Lawrence and Dorothy but maintained by the two sons. The evidence further disclosed that, with regard to one of the parcels, the son furnished the money for the improvements. There was also evidence that the father had said that when he died the properties would belong to his sons. The properties were referred to as the sons' property, though legal title was not in their names. Following the father's death, the sons filed suit to impose constructive trusts on the real estate on which they lived or worked, maintaining that they had occupied the premises for all these years under the representations and assurances from their father that the property would be theirs, even though legal title was otherwise. Nevertheless, this court refused to impose a constructive trust, noting at 325-26, 242 N.W.2d at 875-76:

> The record is completely devoid of any evidence, direct or by inference, to show that Dorothy was named as a grantee in the deeds through some abuse of a confidential relationship. . . .
>
> The evidence therefore does not establish prima facie that Dorothy obtained title by virtue of a confidential relationship, under such circumstances that she ought not, according to the rules of equity and good conscience as administered in chancery, hold and enjoy the benefits of title to the property in question. Under the circumstances shown, equity need not raise a trust by construction upon the legal title to the real estate in question.
>
> Lawrence may well have intended, and we must accept on the basis of the record, that he did orally express his intention that Jerry was to have his home and building and Jim his home, but this alone is not enough to raise a constructive trust in the real estate. If it were, then no deed and no will would be secure. There is nothing in the record to show that such intention was communicated to

Dorothy or that she took title with some agreement with reference thereto.

To the same extent, in the instant case there is no evidence to indicate that Breault either acquired the durable power of attorney or transferred the certificates of deposit into Ruppert's name through either a fraudulent act or in violation of a confidential relationship. At the time that the action was taken, Breault had every reason to believe that Ruppert might remain in a coma for some long time. While one may question in hindsight whether Breault's decisions were the wisest ones, she was simply acting in accordance with the instructions she had previously been given by Ruppert, and in accordance with the legal documents delivered to her by Ruppert. It is clear that, by reason of Ruppert's suffering a stroke before dying, the appellees lost the potential benefit they might have otherwise acquired. But, until Ruppert died, they did not have any present right in that property superior to Ruppert or Breault under the durable power of attorney. Once Ruppert died, the title to the property, having properly passed into Ruppert's name alone, transferred to Breault and Fenny by reason of Ruppert's last will and testament. We do not believe that such evidence meets the test of clearly, satisfactorily, and convincingly establishing the fact that Breault took advantage of some confidential relationship to the detriment of the appellees and in some manner acquired title to property which they lawfully should otherwise have had. See *In re Estate of Lienemann, ante* p. 169, 382 N.W.2d 595 (1986). For that reason we believe that the district court erred in imposing a constructive trust and order that the judgment be reversed and the cause remanded with instructions to dismiss.

There are several other issues raised by this appeal. In view of the fact, however, that we have determined that a constructive trust should not have been imposed and that the property should have remained with Breault and Fenny, we do not address these other issues.

The judgment is reversed and the cause remanded with directions to dismiss.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.