JOSEPHINE M. KNOELL ET AL., APPELLANTS, v. H. DAN HUFF AND
NORTH KANSAS FINANCIAL CORPORATION, APPELLEES.
395 N.W.2d 749

Filed November 7, 1986.    No. 85-232.

David C. Huston of Paine & Huston, for appellants.

Rodney M. Confer of Knudsen, Berkheimer, Richardson & Endacott, for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

Plaintiffs-appellants, Josephine M. Knoell and nine others (investors), appeal from an order of the Lancaster County District Court which sustained a demurrer in favor of the defendants-appellees, H. Dan Huff (Huff), a resident of

Lancaster County, and North Kansas Financial Corporation (NKFC), a Nebraska corporation. The investors brought this suit to recover damages because of financial losses they sustained when the stock they had purchased in NKFC from Huff became worthless. The district court sustained the demurrer and dismissed the investors' petition. The court held that all five causes of action in the third amended petition were barred by the statute of limitations under the Securities Act of Nebraska, Neb. Rev. Stat. §§ 8-1101 et seq. (Reissue 1983), and that all five failed to state facts sufficient to constitute a cause of action. We affirm in part and in part reverse.

The facts in this case are set out in the investors' third amended petition. For the purpose of ruling on Huff's and NKFC's demurrer, we accept the well-pleaded facts in the petition, as distinguished from the conclusions alleged, as true. *Allen v. County of Lancaster*, 218 Neb. 163, 352 N.W.2d 883 (1984). The facts alleged in the petition are deemed admitted for the purpose of ruling on Huff's and NKFC's demurrer.

The investors are stockholders and debenture holders of NKFC. NKFC was formed for the purpose of acting as a holding company to own the stock of a Kansas corporation known as North Kansas Savings Association (NKSA). NKSA was a federally chartered savings and loan association with offices in Beloit and Phillipsburg, Kansas.

In September 1980 the investors were solicited by Huff and his agent, Tom Scheer, to invest in NKFC, which would in turn own a controlling interest in NKSA. During the solicitation, the investors were informed by Huff and Scheer that Huff had experience as a promoter in numerous bank acquisitions in the past and had been successful in arranging the ownership of financial institutions through holding companies. Huff and Scheer also represented to the investors that Huff would act as their agent and would (1) form a holding company to own the stock of NKSA and (2) gain federal home loan bank board approval of the transfer. The investors paid the purchase price for their securities at various times between September 1980 and January 1981. The money paid in was deposited in a repurchase, or "repo," account, earning interest. The total amount invested by all 10 investors was $266,500.

The petition shows that Huff, before soliciting the investors, acquired controlling interest in NKSA in January 1980. To finance the purchase of the NKSA stock, Huff made a downpayment of approximately $300,000 from funds borrowed by him from the National Bank of Commerce in Lincoln, Nebraska. Huff later negotiated a loan of $1.3 million from the Merchants Bank in Topeka, Kansas, to complete the financing. Huff used the funds solicited from the investors to repay part of the $300,000 loan from the National Bank of Commerce.

At the time Huff acquired the stock of NKSA, he was informed by the NKSA stockholders and employees that there was a lawsuit pending against NKSA in the district court of Geary County, Kansas, relating to the breach of a loan commitment.

The holding company (NKFC) was formed on January 5, 1982. At that time Huff assigned to NKFC all of the stock acquired by him in NKSA, representing 89.45 percent of the stock of NKSA. Each investor was issued between one-half and two debentures and 150 to 600 shares of stock in NKFC, depending upon the amount of investment.

On July 29, 1982, judgment was entered against NKSA in the Geary County, Kansas, lawsuit, in the amount of $1,495,944. Thereafter, the federal home loan bank board closed NKSA. By letter dated November 22, 1982, Huff informed the investors that the judgment against NKSA had precipitated the closing by the federal home loan bank board, that he had knowledge of the pending lawsuit at the time he acquired the NKSA stock, and that their investments should be considered worthless. At no time before November 22, 1982, did any of the investors have knowledge of the existence of the Geary County lawsuit pending against NKSA.

The investors filed their petition, setting out three causes of action, against Huff and NKFC on November 21, 1983, for damages incurred as a result of the securities becoming worthless. Huff and NKFC filed a motion to strike and to make the petition more definite and certain. This motion was sustained in part. An amended petition was filed. A second motion was sustained in part, and the investors filed a second

amended petition. Huff and NKFC demurred, and the district court sustained the demurrer on the ground that none of the counts in the petition stated a cause of action. The court again gave the investors additional time to file a further amended petition.

The investors filed their third amended petition on September 24, 1984, setting out five causes of action. Huff and NKFC again filed a demurrer on October 12, 1984, alleging that the causes of action in the petition were barred by the statute of limitations under the Securities Act of Nebraska, §§ 8-1101 et seq., and that the petition did not state sufficient facts to constitute a cause of action. The trial court sustained the demurrer and dismissed the investors' petition with prejudice.

The investors have assigned six errors, which may be consolidated into two: (1) That the court erred in determining that the "Nebraska Blue Sky Law" (now Securities Act of Nebraska, Neb. Rev. Stat. §§ 8-1101 to 8-1124 (Reissue 1983)) provides the exclusive remedy for those who sustain damages in the purchase of securities and that all of the investors' causes of action were barred by the statute of limitations in that act; and (2) That the court erred in determining that none of the causes of action stated facts sufficient to constitute a cause of action.

We first determine whether the trial court was correct in determining that the "exclusive remedy" to the investors was through §§ 8-1101 to 8-1124. Regarding questions of law, this court has an obligation to reach its conclusion independent from the conclusion reached by a trial court. *Boisen v. Petersen Flying Serv.*, 222 Neb. 239, 383 N.W.2d 29 (1986).

A review of the investors' third amended petition shows that all five causes of action are based upon the alleged misconduct of Huff surrounding the sale of stock in NKFC. As previously noted, the trial court determined that the exclusive remedy to the investors was through the Securities Act of Nebraska. The trial court also determined that the contract for the sale of the securities in NKFC "occurred no later than January, 1981." Section 8-1118(3) provides in part that "[n]o person may sue under this section more than two years after the contract of sale." Under the trial court's reasoning, the investors had until January 1983 to timely file their petition in order to pursue their

rights under the Securities Act of Nebraska. The investors filed their original petition on November 21, 1983.

In arguing their first assignment of error, the investors maintain that the Securities Act of Nebraska is not their exclusive remedy and that even if it is, the trial court incorrectly determined the time when the statute of limitations began to run.

The investors argue that their claims are based on negligence, breach of fiduciary duty, and misrepresentation (fraud)—all common-law actions which carry 4-year limitation periods under Neb. Rev. Stat. §§ 25-201 et seq. (Reissue 1985). The investors contend that they are entitled to bring their common-law action as opposed to only seeking a remedy under the Securities Act of Nebraska because "There is no express language in the [current] Blue Sky Law which excludes all other common law causes of action." Brief for Appellants at 19. The investors contend that statutes which effect a change in the common law or take away a common-law right should be strictly construed, and a construction which restricts or removes a common-law right should not be adopted unless the plain words of the act compel it.

Huff and NKFC contend the trial court was correct in its determination that the Securities Act of Nebraska was the exclusive remedy in this case. They point to § 8-1124(1), which they contend "expressly precluded any civil suit to enforce preexisting common law remedies law [sic] after August 18, 1967." Brief for Appellees at 5. Section 8-1124(1) provides:

Prior law shall exclusively govern all suits, actions, prosecutions, or proceedings which are pending or may be initiated on the basis of facts or circumstances occurring before August 18, 1965, except that no civil suit or action may be maintained to enforce any liability under prior law unless brought within any period of limitation which applied when the cause of action accrued and in any event within two years after August 18, 1965.

Our review, however, of the history of this section and its earlier enactments leads us to the conclusion that the reference to "prior law" refers not to prior common law but, rather, to prior statutory law governing "blue sky" transactions.

Nebraska has had a "blue sky" law in one form or another since at least 1913. See 1913 Neb. Laws, ch. 199, p. 603. Section 13 of that act established a 1-year statute of limitations. The act provided in part: "[P]rovided, however, no action to rescind any contract of sale made in contravention of *the provisions of this act* shall be maintainable unless the same is instituted within one year." (Emphasis supplied.) It seems quite clear from the language of § 13 that one had an option. He or she could either maintain an action to rescind a contract of sale under the newly enacted "blue sky" law, so long as it was instituted within 1 year, or could bring any common-law action within the applicable statute of limitations then in existence for such action. Nothing is said in the law of 1913 about the act's being cumulative. Yet, it is quite clear from a reading of the act that such is the case.

In 1921 the "blue sky" laws were again amended. See 1921 Neb. Laws, ch. 308, p. 967. For the first time there appears language regarding the extent of one's liability. Section 28 specifically provides: "Nothing herein contained shall limit or diminish the liability of any person or company now imposed by law, or prevent the prosecution of any person or company violating any of the provisions of this Act for the violation of any other statute or of any other provision hereof." While one may argue that the reference to "law" in § 28 refers to the common law, reading the section in its entirety leads one to the conclusion that liability "imposed by law" refers to other statutory laws and does not in any manner attempt to either expand or diminish an individual's common-law liability.

This becomes even clearer when, in 1937, the Legislature adopted a comprehensive "blue sky" law. See 1937 Neb. Laws, ch. 195, p. 790. Section 38 of the 1937 act provides as follows: "The provisions of Sections 81-5419, 81-5428 and 81-5429, Compiled Statutes of Nebraska, 1929, shall be and remain in full force and effect and shall apply to all of the provisions of this Act the same as though they had been originally enacted herein." Comp. Stat. § 81-5429 (1929) is identical with § 28 of the 1921 act. The language of § 81-5429 was brought in its entirety into Neb. Rev. Stat. § 81-346 (1943).

It was not until 1965 that any attempt was made to limit

liability under "blue sky" laws. See 1965 Neb. Laws, ch. 549, p. 1762. Section 24(1) of that enactment provided:

Prior law shall exclusively govern all suits, actions, prosecutions, or proceedings which are pending or may be initiated on the basis of facts or circumstances occurring before the effective date of this act, except that no civil suit or action may be maintained to enforce any liability under prior law unless brought within any period of limitation which applied when the cause of action accrued and in any event within two years after the effective date of this act.

It seems clear to us that no attempt was being made by the Legislature to do away with common-law causes of action, but only to make it clear that a suit could not be brought under a prior "blue sky" act unless suit was commenced within 2 years after the effective date of the act. Prior to 1965 one could maintain an action under either the 1937 act or the pre-1937 acts without limitation. After 1965 one was required to bring an action under the pre-1965 law for causes of action accruing prior to the effective date of the act and, in any event, must do so within 2 years after August 18, 1965, or forever be precluded from maintaining such action. This is further made clear when one looks at § 8-1124(3), which reads: "Prior law shall apply in respect of any offer or sale made within one year after August 18, 1965, pursuant to an offering begun in good faith before its effective date on the basis of an exemption available under prior law." Obviously, there were no exemptions available under the common law, the common law having no application to either registration or exemption. Therefore, Huff's and NKFC's argument that the term "prior law" includes the common law as well as statutory "blue sky" law must fail. It is a long-recognized rule of statutory construction that where the same word is used repeatedly in the same act, unless the context requires otherwise, the word is to have the same meaning. See, *Seward County Rural Fire Protection Dist. v. County of Seward*, 156 Neb. 516, 56 N.W.2d 700 (1953); *Edgerton v. Hamilton County*, 150 Neb. 821, 36 N.W.2d 258 (1949). Section 8-1124(1) creates a transition period between prior statutory "blue sky" laws and current statutory "blue sky" laws. This transition period allowed causes of action arising out of facts

and circumstances prior to August 18, 1965, the effective date of the act, to be brought within its period of limitation, but in no event later than August 18, 1967. The statute, however, does not preclude common-law actions from being brought before their statutes of limitations have run.

We hold, therefore, that the language of § 8-1124(1) does not provide that the Securities Act of Nebraska is the exclusive remedy under state law in cases involving the sale of securities.

Having decided this issue, we must now determine if the trial court correctly determined that none of the allegations stated facts sufficient to state a cause of action. With respect to the first cause of action, the trial court ruled that no sufficient facts were alleged from which a conclusion can be drawn that Huff and NKFC were negligent and that the negligence was the proximate cause of investors' damages.

> "In order to constitute actionable negligence, there must exist three essential elements, namely, a duty or obligation which the defendant is under to protect the plaintiff from injury; a failure to discharge that duty; and injury resulting from the failure.
>
> "The petition must allege these essential elements, and the proof must support the allegations, or there can be no recovery."

*Ring v. Kruse*, 158 Neb. 1, 6, 62 N.W.2d 279, 284 (1954).

Investors' third amended petition does allege the representation by Huff that he would act as investors' agent in handling their money, forming a holding company, and issuing stock and debentures. The petition further alleges that Huff breached his duty to investors by failing to inform them of the pending lawsuit, by failing to hold their funds in escrow, and by failing to consult with an attorney regarding the merits of the pending lawsuit. Finally, the petition alleged damages in the amount of $266,500 plus interest. The essential elements to constitute actionable negligence have been alleged, and the trial court was incorrect in dismissing investors' first cause of action.

The second cause of action, which alleges constructive fraud and the imposition of a trust, is one in equity. A constructive trust is a relationship, with respect to property, subjecting the

person who holds title to the property to an equitable duty to convey it to another on the ground that his acquisition or retention of the property would constitute unjust enrichment. Each case involving the existence of a constructive trust is to be determined on the peculiar facts, circumstances, and conditions presented therein. *Ruppert v. Breault*, 222 Neb. 432, 384 N.W.2d 284 (1986). The burden of proof is upon one seeking to establish the existence of a constructive trust to do so by evidence which is clear, satisfactory, and convincing in character. *Ford v. Jordan*, 220 Neb. 492, 370 N.W.2d 714 (1985). Accepting as true the facts alleged in the petition, the investors have alleged facts sufficient to state a cause of action. The trial court was incorrect in sustaining Huff's and NKFC's demurrer on this cause of action.

In their assignment of error concerning their third cause of action, the investors allege that the district court erred "in determining that the third cause of action did not state facts which were sufficient to constitute a cause of action under 15 U.S.C. § 77L(2) and that the cause was barred by the limitation of 15 U.S.C. § 77m." The investors have raised two issues in this assigned error; one being a statute of limitations issue and the other presenting a pleading issue. Both §§ 77*l*(2) and 77m are part of the Securities Act of 1933, 15 U.S.C. §§ 77a et seq. (1982), an act designed to protect investors by promoting full disclosure of information believed to be necessary to the making of informed investment decisions. Our authority to review and grant relief under the Securities Act of 1933 is set out in § 77v(a), which provides that state courts shall have jurisdiction of offenses and violations under the 1933 act concurrent with U.S. district courts. See, *First National City Bank New York v. Smith,* 531 P.2d 321 (Okla. 1975); *Greenfield v. Cheek,* 122 Ariz. 70, 593 P.2d 293 (1978), *aff'd* 122 Ariz. 57, 593 P.2d 280 (1979).

The investors' third cause of action is based upon alleged prospectus and interstate communications violations by Huff and NKFC under the 1933 act, pursuant to § 77*l*(2). The investors allege that the omission of "material fact" in this case is the nondisclosure of the Geary County, Kansas, lawsuit. In dismissing the investors' third cause of action, the trial court

determined that any relief to the investors under the 1933 act was barred by the statute of limitations of § 77m, which provides that any action under § 77*l*(2) must be brought within 1 year after the discovery of the untrue statement or omission, or after such discovery should have been made by the exercise of reasonable diligence, but in no event later than 3 years after the sale. The 3-year limitation period acts as a complete bar, regardless of when discovery is made. *Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301 (9th Cir. 1982); *Summer v. Land & Leisure, Inc.*, 664 F.2d 965 (5th Cir. 1981).

In deciding if the statute of limitations under § 77m has run, the issue, as framed by both parties, is whether or not the action was brought "more than three years after the sale." § 77m. The investors argue that there was no sale until after the formation of the holding company on January 5, 1982. For the reasons set out below, we do not agree. The contract begins to run after the contract of sale.

On its face, the third amended petition shows that 7 of the 10 investors, namely, Josephine Knoell, Susan Huston, Julius Kowalski, Gerald Siedband, Charles Newell, Ford Van Lines, and Vern Westberg, all paid for their investment units in September and October of 1980. Other courts have agreed with our holding above, that a "sale" under the Securities Act of 1933 occurs when an offer to purchase was accepted. See *Tirone v. Calderone-Curran Ranches, Inc.*, Fed. Sec. L. Rep. (CCH) ¶ 96,480 (W.D.N.Y. 1978). In this case the sale occurred when the investors accepted Huff's offer of sale by the payment of their purchase price for the investment units. Accordingly, the actions of the above-named investors are time barred by § 77m, since they did not bring this action until November 21, 1983, more than 3 years after the sale to them occurred.

The three remaining investors, Dale Herman, Lloyd Wheeler, and James Wheeler, paid for their investments in December 1980 and January 1981. The trial court was incorrect in finding that these investors were time barred by § 77m. However, in dismissing the third cause of action (as to all the investors), the trial court determined that the "third cause of action does not state facts sufficient to constitute a cause of action in that it contains no allegations sufficient to support a

recovery by plaintiffs [investors]."

Compliance with § 77m is a substantive rather than a procedural matter, and a plaintiff must affirmatively allege facts indicating his action has been brought timely when seeking relief under the 1933 act. *Dahl v. Gardner*, 583 F. Supp. 1262 (D. Utah 1984). The third amended petition did not set out any allegations as to the time and circumstances of discovery of the alleged fraud, any allegations as to why the alleged fraud was not discovered sooner, nor any allegations as to what diligence the investors used in making discovery. *Brick v. Dominion Mortg. & Rlty. Trust*, 442 F. Supp. 283 (W.D.N.Y. 1977). The Wheelers and Herman have not included allegations as to their diligence in attempting to discover the alleged fraud or any reason why they did not discover it within 1 year of the sales to them in December 1980 and January 1981.

Ordinarily, a plaintiff is allowed to amend his petition to attempt to plead sufficient facts to constitute a cause of action. However, in this case absolute dismissal is appropriate. The investors have pled and repled this cause of action in essentially the same way four different times. In the initial petition and in the third amended petition, they pled facts concerning an alleged violation of § 77*l*(2) in the same way. Neb. Rev. Stat. § 25-854 (Reissue 1985) provides that if a demurrer be sustained, the adverse party may amend his pleading "if the defect can be remedied by way of amendment." That right to amend, however, is not without limitation. In *Suzuki v. Gateway Realty*, 207 Neb. 562, 565, 299 N.W.2d 762, 765-66 (1980), we stated:

> This section of the statute has been held by this court on several occasions to not provide an absolute right of amendment. See, *Evans v. Metropolitan Utilities Dist.*, 184 Neb. 172, 166 N.W.2d 411 (1969); *Weiner v. Morgan*, 175 Neb. 656, 122 N.W.2d 871 (1963); *Coverdale & Colpitts v. Dakota County*, 144 Neb. 166, 12 N.W.2d 764 (1944). This court has previously stated that, before error can be predicated upon the refusal of the court to permit an amendment to a petition after demurrer thereto is sustained, the record must show that, under the circumstances, the ruling of the court was an abuse of

discretion. *Coverdale & Colpitts v. Dakota County; Weiner v. Morgan.*

See, also, *Schmuecker Bros. Implement v. Sobotka*, 217 Neb. 114, 348 N.W.2d 130 (1984). The trial court did not err in not ordering a further right to amend the investors' petition with respect to the third cause of action.

The district court held that investors' fourth cause of action did not state facts sufficient to state a cause of action. We agree with the trial court's determination. The pleadings constituting this cause of action merely restate facts contained elsewhere in the third amended petition. These facts are duplicative and no separate theory of recovery is alleged. We cannot discern a theory of recovery and so affirm the sustaining of Huff's and NKFC's demurrer with respect to this cause of action.

The fifth cause of action alleges fraud, and investors assign as error the court's determination that there were insufficient facts from which the necessary intent for fraud could be inferred. Investors alleged fraudulent misrepresentations and omissions and damages. The elements of fraud are (1) a false representation of material fact, (2) knowledge that the representation was false or made in reckless disregard as to its truthfulness or falsity, (3) an intent to induce another to act, (4) a justifiable reliance on the representation, and (5) injury or damage resulting from such reliance. *Mueller v. Union Pacific Railroad*, 220 Neb. 742, 371 N.W.2d 732 (1985). The essential elements to constitute fraud have been alleged, and the trial court was incorrect in dismissing investors' fifth cause of action.

For the reasons set forth above, the judgment of the trial court is affirmed in part and reversed in part.

AFFIRMED IN PART, AND
IN PART REVERSED.

GRANT, J., dissenting.

I dissent from so much of the majority opinion that holds, in effect, that the 2-year statute of limitations of Neb. Rev. Stat. § 8-1118(3) (Reissue 1983) does not control the disposition of plaintiffs' action in this case. Section 8-1124(1) provides:

Prior law shall exclusively govern all suits, actions, prosecutions, or proceedings which are pending or may be

initiated on the basis of facts or circumstances occurring before August 18, 1965, except that no civil suit or action may be maintained to enforce any liability under prior law unless brought within any period of limitation which applied when the cause of action accrued and in any event within two years after August 18, 1965.

This section created a transition period between "prior law" and the Securities Act of Nebraska (Neb. Rev. Stat. §§ 8-1101 to 8-1124 (Reissue 1983)). This period allowed causes of action arising out of facts and circumstances prior to August 18, 1965, to be brought within the period of limitation applicable to those actions, but in no event later than August 18, 1967. These actions included common-law actions, such as fraud and negligence. In enacting §§ 8-1101 et seq., the Legislature knew that common-law causes of action had limitation periods extending beyond August 18, 1967. Section 8-1124(1) became law on August 18, 1965. The language of § 8-1124(1) plainly states that the Legislature intended that all actions that arose under "prior law" concerning securities had to be brought within 2 years after August 18, 1965. In requiring all "prior law" actions to be brought within this time, the Legislature made it clear that the Securities Act of Nebraska provided the controlling statute of limitations in securities cases arising after August 18, 1965, no matter what the theory of recovery.

"Prior law" included the Blue-Sky Law, Neb. Rev. Stat. §§ 81-302 to 81-346 (Reissue 1958). Section 81-346 of the Blue-Sky Law preserved preexisting common-law remedies in providing: "Nothing contained in sections 81-302 to 81-345 shall limit or diminish the liability of any person or company now imposed by law, or prevent the prosecution of any person or company violating any of the provisions of said sections for the violation of any other statute . . . ." The Blue-Sky Law, including § 81-346, was repealed by 1965 Neb. Laws, ch. 549, § 25, p. 1798. The Securities Act of Nebraska was enacted by 1965 Neb. Laws, ch. 549, §§ 1 to 24, pp. 1762-98. It appears to me that in repealing § 81-346, the Legislature specifically determined that the newly enacted Securities Act of Nebraska would be controlling as to all security transactions.

I note also that the Securities Act of Nebraska, as adopted,

was modeled substantially after the Uniform Securities Act, 7B U.L.A. 509 et seq. (1985). Specifically, § 8-1118 is almost a complete adopting by the Nebraska Legislature of § 410 of the Uniform Securities Act. A key provision of the Uniform Securities Act, § 410(h), however, was not adopted. That section provided: "The rights and remedies provided by this act are *in addition to* any other rights or remedies that may exist at law or in equity, but this act does not create any cause of action not specified in this section or section 202(e)." (Emphasis supplied.) By refusing to enact the provisions of § 410(h) of the Uniform Securities Act, the Legislature made a conscious decision that the Securities Act of Nebraska controlled all actions concerning securities. It appears to me that if the Legislature desired to preserve other general statutes of limitations under the new Securities Act of Nebraska, then either the Legislature would not have repealed § 81-346 or it would have enacted a provision similar to § 410(h) of the Uniform Securities Act.

I believe, therefore, that the language of § 8-1118(3) sets out the applicable statute of limitations of 2 years under Nebraska law in cases involving the sale of securities. Other jurisdictions have reached the same result. See, *O'Hara v. Kovens*, 625 F.2d 15 (4th Cir. 1980); *Dehler v. Setliff*, 143 Ga. App. 430, 238 S.E.2d 723 (1977); *Diamond v. Lamotte*, 709 F.2d 1419 (11th Cir. 1983); *Friedlander v. Troutman, Sanders, Lockerman*, 788 F.2d 1500 (11th Cir. 1986).

Plaintiffs' action was not brought within the 2-year period. I would affirm the judgment of the trial court dismissing plaintiffs' action.

Boslaugh and Hastings, JJ., join in this dissent.